**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | | |
|---|---|---|
| **ISAAC DONALD EVERLY,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No.: 3:17 –cv- 01440** |
| | ) | **Judge Trauger** |
| **PATRICE Y. EVERLY, PHILLIP J.** | ) | |
| **EVERLY, CHRISTOPHER EVERLY,** | ) | |
| **THE PHILLIP EVERLY FAMILY TRUST** | ) | |
| **and EVERLY AND SONS MUSIC (BMI)** | ) | |
| | ) | |
| **Defendants.** | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR**
**SUMMARY JUDGMENT ON ALL CLAIMS**

Plaintiff Isaac Donald Everly ("Plaintiff") respectfully submits this memorandum of law in support of his motion for summary judgment in Plaintiff's favor on all Counts of the Complaint. A separate Statement of Undisputed Material Facts is being filed with the motion.

**INTRODUCTION AND SUMMARY OF ARGUMENT**

This case is a dispute between Plaintiff and Defendants as to the authorship of musical compositions. This is not a case about whether or not termination rights granted by 17 U.S.C.§§203(a) and 304(c)("Sections 203 and 304" respectively) are alienable, or if a document is an "agreement to the contrary." Defendants' Counterclaim and Prayer for Relief, and notices of termination filed for the SCs, presuppose that Phil Everly is a co-author of the SCs. Plaintiff repudiated Phil Everly's authorship of the SCs more than 37 years ago.

Plaintiff seeks the Court's determination on summary judgment that Don Everly is the sole author of the subject compositions *Cathy's Clown*, *Sigh, Cry, Almost Die* and *That's Just Too Much* (the "SCs") and that Phillip Everly ("Phil Everly") is not a co-author. Plaintiff argues

that Defendants' claims to Phil Everly's co-authorship of the SCs as the basis for their notices of termination are time-barred by the United States Copyright Act's (the "Act") three-year statute of limitations (17 U.S.C.§507[b]). Defendants, through the filing of various notices of termination filed for the SCs and by the Prayer for Relief in their Counterclaim in this case, are seeking to reclaim Phil Everly's purported co-authorship share of the SCs after the undisputed facts show that Plaintiff's words, actions and deeds prior to June 1980, plainly and expressly repudiated such co-authorship.

If Phil Everly is not a co-author of the SCs, then Phil Everly never possessed termination rights. If Phil Everly is not a co-author of the SCs, then Defendants have no standing as statutory heirs of an "author" and are not eligible to exercise the rights granted solely to authors by Sections 203 and 304. Thus, this Court should award Plaintiff's relief by invalidating any notices of termination filed for the SCs by Defendants.

Plaintiff respectfully asks this Court to find in favor of Plaintiff in Counts I and III of the Complaint based on the statute of limitations defense raised by Plaintiff in his Answer.

In the alternative, if the Court finds Defendants are not barred by the statute of limitations, Plaintiff seeks summary judgment that the document for the SCs signed by Phil Everly entitled "Release and Assignment," notarized on June 10, 1980 (the "1980 Release") is not a "grant of a transfer or license of copyright or of any right under copyright," and hence, not subject to termination pursuant to the Act as a matter of law. Thus, Plaintiff respectfully asks this Court to find in favor of Plaintiff on Count II of the Complaint.

**STATEMENT OF MATERIAL FACTS**

Don and Phil Everly are brothers, and were members of the infamous musical group the Everly Brothers. Motion for Summary Judgment ("Mo.") Ex. A (Declaration of Don Everly

2

("Don Everly Decl.") at ¶2). Their impact on music history is beyond compare and beyond the necessity of further description. No one other than Don and Phil Everly alone can fully understand what these brothers and musical icons experienced in their lifetime. Don Everly Decl. at ¶25.

*Cathy's Clown* was an incredibly successful hit single for the Everly Brothers. Don Everly Decl. at ¶5. It was recorded for Warner Bros. Records ("WB") and released in April 1960. *Sigh, Cry, Almost Die* and *That's Just Too Much* were also recorded for WB and released in July 1960 and December 1960, respectively. Don Everly Decl. at ¶4; Compl. Ex. B; Mo. Ex. I (SonyATV 0146-147; 0167-168). Don Everly claims sole authorship of the SCs and that Phil Everly is not a co-author. Don Everly Decl. at ¶¶3, 6; Mo. Ex. E (Deposition of Don Everly ("DE Dep") 11:14-23, 22:15-22) .

The copyright registrations for the SCs list Don and Phil Everly as co-authors. Compl. Ex. B; Mo. Ex. I (SonyATV 0146-147; 0167-168). Don and Phil Everly both signed 1960 grants of 100% of the worldwide copyright for the SCs to their music publisher Acuff-Rose Publications, Inc. ("Sony" as successor-in-interest), retaining only a right to receive one-half of the royalties derived from the SCs (the "1960 Grants"). Don Everly Decl. at ¶ 8; Compl. Ex. A; Mo. Ex. I (Sony/ATV 0154-155; 0177-178).

Prior to June 1980, through either or both a letter and phone call to Phil Everly, it is undisputed that Plaintiff "demanded" that Phil Everly "take his name off" [DE Dep  39:19-22; Mo. Ex. B (Deposition of Patrice Everly ("PE Dep") 29:10-12)] and (a) legally acknowledge that he did not co-write *Cathy's Clown* and some "other songs" [DE Dep 17:19-25]; (b) give him his songs back, "set the record straight" [DE Dep 17:19-25; 18:25, 19:1-8] "I said, it's time for me to get my songs back." [DE Dep 40:5-8]; and (c) correct the record that Don was the sole writer.

Don Everly Decl. at ¶¶12, 13, 15; DE Dep 19:9-12. In fact, Plaintiff's demands to repudiate Phil Everly's co-authorship of the SCs have been described as "very violent verbally" [Mo. Ex. D (Deposition of Joey Paige ("JP Dep") 12:24-25)], "absurd" [Mo. Ex. C (Deposition of Phillip Jason Everly "JE Dep") 29:10-18)], and "asinine." JE Dep 31:1-3. Phil Everly was "very pissed" [JP Dep 13:15-17, 14:1-2; 15:19-20; JE Dep 31:4-5], "very upset" and "quite angry" [JE Dep 11:9-13, 11:17; 12:18-19, 25:25, 26:1-3; PE Dep 29:18-19] that Plaintiff had "talked him into" giving up those rights. Mo. Ex. F (Deposition of Teri Brown ("TB Dep") 24:17-23, 24:25, 25:1-7). Something had happened that irritated him. JE 11:21-22. Phil Everly was even "immensely" cautioned about the ramifications of Plaintiff's demands. JP Dep 14:3-25, 18:24-25, 19:1.

As a result of Plaintiff's demands in 1980 for Phil Everly to renounce his co-authorship of the SCs, a series of events ensued.

1. Phil Everly executed a series of documents entitled "Release and Assignment" for 17 songs; the referenced 1980 Release being for the SCs, which documents were notarized and recorded in the United States Copyright Office ("Copyright Office") effective June 18, 1980. JE Dep Ex. 1; Mo. Ex. I (Sony/ATV 0033); Mo. Ex. N (Defendants' Response to Interrogatory 6): "Don repeatedly and continually harassed Phil throughout his lifetime….to pacify Don, [he] signed the 1980 (and other) releases."

Plaintiff's objective was clear in demanding that Phil Everly take his name off the SCs and legally recognize Plaintiff as the sole author - "My songs were mine again. I had written them and that was it." DE Dep 20:15-18; Don Everly Decl. at ¶15. According to Phil Everly's wife, "his brother *made him* sign something." PE Dep 11:1-6.

The 1980 Release provided that Phil Everly, "as his free act and deed" surrendered all of his right to claim authorship in the SCs and released to Plaintiff, "all of his rights, interests and

4

claim in and to said compositions, including rights to royalties ***and his claim as co-composer***, effective June 1, 1980" (emphasis added). The 1980 Release further stated "This transfer and release…includes *not only the said Phil Everly's right to royalties and other income arising out of said compositions from and after the effective date, but also **every claim of every nature by him as to the composition[sic] of said songs.**"  (emphasis added)  Compl. Ex. C.

2. Plaintiff's representatives filed the 1980 Release with the performing rights society Broadcast Music, Inc. ("BMI") and Acuff-Rose Publications – both being asked to "correct" the authorship designation for the SCs by removing Phil Everly's name and paying all of the SCs' songwriter royalties ("Songwriter Royalties") to Plaintiff prospectively. Don Everly Decl. at ¶¶17, 18. Thereafter, BMI and Acuff-Rose Publications corrected their records [DE Dep 21:8-14; Mo. Ex. K (BMI000052, 000054, 000057); Motion Ex. I (SonyATV 0044, 0046-47, 0051, 0053, 0183, 0260)]; and ceased payment of any Songwriter Royalties to Phil Everly. DE Dep 22:7-12; Mo. Ex. L (Affidavit of Francis J. Del Casino ("FDC Aff") Ex. A); Don Everly Decl. at ¶18.  A July 9, 1980, BMI memo stated: "The above writer [Phil Everly] has assigned to his brother…a number of works which *they claim* were written solely by Don Everly." (emphasis added) Mo. Ex. K (BMI000046). After filing of the 1980 Release with the publisher, hundreds of licenses were issued by Sony designating Plaintiff as the sole writer of *Cathy's Clown*. Mo. Ex. I (Sony/ATV 00242-254).

3. In 1990, Reba McEntire's cover recording of *Cathy's Clown* earned the coveted Robert J. Burton Award, BMI Country Song of the Year, an award that was presented to Plaintiff as the sole songwriter in an awards celebration that Plaintiff attended without Phil Everly. DE Dep 28:4-9; Mo. Ex. K (BMI000048-49); Don Everly Decl. at ¶20; Mo. Ex. H (EVERLY 000067). Plaintiff posed alone for the congratulatory publicity and promotion for the award, which was

5

published in double page and full page advertisements in important trade publications such as

Billboard (October 20, 1990) [Don Everly Decl. Ex. A] and the 50th Anniversary publication of

BMI MusicWorld (Fall 1990 edition). DE Dep Ex. 5. It should be noted that prior to 1980, both

Plaintiff and Phil Everly were awarded songwriting honors for *Cathy's Clown* by BMI, including

in 1961 with a BMI Pop Award and in 1975 with a BMI R & B Award. Mo. Ex. K (BMI000060-

63). Phil Everly was aware Plaintiff alone took home this BMI award in 1990, where he lost out

on what he considered to be a "prized possession." JE Dep 19:1-6.

    4. The label copy and sheet music for the highly successful Reba McEntire version of

*Cathy's Clown* as well as label copy, liner notes and packaging for other releases credited

Plaintiff as the sole author. Don Everly Decl. at ¶20; Mo. Ex. E (EVERLY 000068); Mo. Ex. I

(Sony/ATV0105, 0126-133).

    5. Plaintiff engaged counsel to file a 2011 notice to terminate the 1960 Grants and

recapture 100% of the United States copyright in the SCs ("U.S. Termination Rights") effective

April 14, 2016 (recorded in the Copyright Office effective July 15, 2011). Compl. Ex. F; FDC

Aff. at ¶12. As of March 2011, Plaintiff claimed exclusive ownership of the U. S. Termination

Rights in the SCs. Don Everly Decl. at ¶21. Also in 2011, Plaintiff's authorized his attorney to

file paperwork with the Copyright Office to remove Phil Everly's name as an author of the SCs

on the original 1960 copyright registrations. Don Everly Decl. at ¶21. The forms his attorney

filed each stated: "Corrected Information: Delete Phil Everly" and

> "Explanation of Correction: Copyright claimant/publisher, Acuff-Rose Publications, mistakenly listed Phil Everly as co-author, however, Don Everly is the sole author as confirmed by the agreement signed by Phil Everly and filed as Recorded Documents #V1794P378." FDC Aff Ex. C.

Although the forms were submitted by counsel on December 31, 2011, the Copyright Office rejected them stating corrections to pre-1978 copyright registrations had to be filed within the first 28 years of registration. FDC Aff ¶13.

Phil Everly did not exercise any rights as a co-author of the SCs from at least June 10, 1980 until his death, although he could have. In 2007, Phil Everly engaged Lewis Anderson to file certain notices of termination for three songs; but not for the SCs. Mo. Ex. G (Deposition of Lewis Anderson ("LA Dep") 19:20-25, 22:1-3). "..when I worked for Phil he wanted to do three songs. I was not asked to open up, research, or look into anything other than those three songs." LA Dep 28:14-16. In 2012, Phil Everly engaged Copyright Recapture to file certain notices of termination. Copyright Recapture provided Phil Everly with copies of four notices of termination they had prepared covering 19 songs with Sony, two songs with Universal Music and one song with Warner/Chappell Music. The SCs were not included in the notices they prepared nor were they evidenced in the Overview of work they performed.   Mo. Ex. M (PE000102A-108A, PE000115A-124A); Mo. Ex. J (LA 27:25, 28:5).

It wasn't until months after Phil Everly's death in January 2014, when Defendants filed a 2014 notice purporting to terminate the 1960 Grant for *Cathy's Clown* effective November 14, 2016, that anyone had claimed Phil Everly was a co-author of an SC. LA Dep 38:13-21; Compl. Ex. G.  Defendants didn't file a notice purporting to terminate the 1960 Grants for *Sigh, Cry, Almost Die* or *That's Just Too Much* until after this lawsuit was filed.  In an attempt to terminate the 1980 Release, Defendants filed a 2016 notice of termination on Plaintiff, effective August 15, 2018.  Compl. Ex. H.  In response thereto, Plaintiff filed this Declaratory Judgment action.

**LEGAL STANDARD**

7

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party has the initial burden of showing the absence of a genuine issue of material fact as to an essential element of the non-moving party's case. See *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1476 (6th Cir. 1989). "[N]ot every issue of fact or conflicting inference presents a genuine issue of material fact." *Id.* at 1477. An issue of fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-movant. See *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)("Anderson").

Once the moving party satisfies its burden, the burden shifts to the non-moving party to set forth specific facts showing a triable issue. See *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In meeting this burden, the non-moving party must adduce more than a scintilla of evidence in support of his position; it is not sufficient for the non-moving party merely to "show that there is some metaphysical doubt as to the material facts." *Id.* "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Id.* at 587. If the evidence offered by the non-moving party is "merely colorable," or "not significantly probative," or not enough to lead a fair-minded jury to find for the non-moving party, the motion for summary judgment should be granted. *Anderson,*, 477 U.S. at 249-52. A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate. *Id.* at 247-49.

## SECTIONS 203 AND 304 LAW AND POLICY

In 1976, Congress chose to amend the Act to allow the termination of certain grants of copyright or rights under copyright executed by "the *author*," "the widow, widower, or children

of the *author*," "the *author*'s executors," or "the *author*'s next of kin." Sections 203 and 304. The laws were intended to "protect authors against unremunerative transfers." H.R. Rep. No. 94-1476 at 124 (1976), *reprinted in* 1976 U.S.C.C.A.N. 5659, 5740; see also *Mills Music, Inc. v. Snyder*, 469 U.S. 153, 172-173 (1985)(to "relieve authors of the consequences of ill-advised and unremunerative grants that had been made before the author had a fair opportunity to appreciate the true value of his work product..."). The purpose of the statute is to redress unequal bargaining positions when it is impossible to determine a copyright's value.

## ARGUMENT

### I.     Defendants are time-barred by the Act's three-year statute of limitations from asserting Phil Everly is a co-author of the SCs

Defendants assert in their Counterclaim that Phil Everly is a co-author of *Cathy's Clown*. Defendants' Counterclaim ¶4. In order for Defendants to file valid and effective notices of termination for the SCs, they need to prove that (a) Phil Everly is a co-author of the SCs, and (b) the grants being terminated are of a transfer of copyright or a right under copyright.

The Court need not address Defendants' assertions or either condition required for a valid notice of termination. The Court need not attempt to unravel the complex and complicated personal and professional relationship of Don and Phil Everly. The Court need not substitute its judicial determination as to who actually wrote the SCs or what either party intended in the 1980 Release. And finally, the Court need not re-write rock and roll history. Don and Phil Everly did that themselves in 1980. The Act's statute of limitations precludes Defendants from trying to resurrect Phil Everly's co-authorship of the SCs.

Defendants cannot merely presuppose that Phil Everly is a co-author of the SCs in their attempts to exercise the rights reserved for authors under Sections 203 and 304. They first meet the antecedent showing that Phil Everly is in fact, a co-author of the SCs. This in turn requires

9

Defendants to assert their claim of co-authorship within the applicable statute of limitations period. In *Cambridge Literary Prop., Ltd., v. W. Goebel Porzellanfabrik G.m.b.H. & Co. KG,* 510 F.3d 77 (1st Cir. 2007)("*Cambridge*"), a state law claim for accounting required the party to first establish its ownership interest in the copyright When claims for both infringement and ownership are alleged, one being derivative of the other, the infringement claim is timely only if the corresponding claim to ownership is timely. *Roger Miller Music, Inc. v. Sony/ATV Publ'g, LLC,* 477 F.3d 383, 389-90 (6th Cir. 2007)("*Roger Miller*"). See also *Cambridge,* 510 F.3d at 80-81 (plaintiff's claim of ownership barred by three-year statute of limitations); *Weber v. Geffen Records, Inc.,* 63 F.Supp.2d 458, 464 (S.D.N.Y 1999)("No cause of action, whether or not brought under the Copyright Act, may be premised on a time-barred challenge to copyright."); *Margo v. Weiss,* No. 96 Civ. 3842 (MBM), 1998 WL 2558 at *9 (S.D.N.Y. Jan. 5, 1998)(non-copyright claims [e.g., breach of fiduciary duty, duty to account] were rejected because they were based on the assumption that the parties had been co-authors, and the claim for co-authorship was time-barred); and *Tomas v. Gillespie*, 385 F.Supp.2d 240 (S.D.N.Y. 2005), where plaintiff sought to possess a termination interest under Sections 203 and 304 as a natural child of Dizzie Gillespie, and the Court found "[t]he primary remedy she seeks is a declaration that she is Gillespie's natural child and a co-owner of the renewal copyrights. Without that declaratory relief, none of the subsidiary remedies that flow from it … are available." *Id.* at 246.

**A. In the disputed copyright authorship or ownership context, the Act's three-year statute of limitations acts as a complete bar.**

"All of the federal circuit courts of appeal that have addressed the issue…agree that a determination of copyright ownership based on a disputed allegation of co-authorship presents a federal question that arises under, and must be determined according to, the Copyright Act," *Cambridge,* 510 F.3d at 86, and therefore the three-year statute of limitations applies. The 6th

Circuit agrees with its sisters circuits. *Severe Records, LLC v. Rich*, Case No. 09-6175 (6th Cir. September 23, 2011).

The purpose of the statute of limitations is to assure after a fixed period of time the parties can go about their business with certainty and without fear of having their property taken away through the legal process. For copyrights, stability of title is greatly needed and has immense economic importance. *Zuill v. Shanahan,* at 1370. "Because copyright ultimately serves the purpose of enriching the general public through access to creative works, it is peculiarly important that the boundaries of copyright law be demarcated as clearly as possible" *Fogerty v. Fogerty,* 510 U.S. 517, 527 (1994). Indeed, the United States Supreme Court has stressed that "Congress' paramount goal in revising the 1976 Act [was] enhancing predictability and certainty of copyright ownership." *Community for Creative Non-Violence v. Reid*, 490 U.S. 730, 749, 109 S.Ct. 2166, 2177, 104 L.Ed.2d 811 (1989)("*CCNV*").

Unlike the remedial manner in which the statute of limitations is applied when it comes to copyright infringement actions, the Courts apply 17 U.S.C. §507(b) as a complete bar to claims of disputed authorship. *Zuill*, 80 F.3d at 1369. When co-ownership or sole ownership claims are raised in the context of the termination of grants, §507(b) operates as it normally does – it bars claims brought more than three years after plain and express repudiation. See *Scorpio Music v. Willis*, Case No. 11cv1557 BTM(RBB)(S.D. Cal. March 4, 2013).

B. **Plaintiff's "plain and express repudiation" of authorship triggered the Act's three-year statute of limitations.**

Section 507(b) provides that "no civil [copyright] action shall be maintained….unless it is commenced within *three years after the claim accrues.*" 17 U.S.C. §507(b)(emphasis added). "A claim for declaratory judgment of co-ownership and the relief ancillary to such a claim is a civil action, and 'no civil action shall be maintained….unless it is commenced within three years

11

after the claim accrued.'" *Zuill v. Shanahan,* 80 F.3d 1366, 1371 (9th Cir. 1996) *cert. denied,* 519 U.S. 1090 (1997)("*Zuill*")(quoting 17 U.S.C. §507(b)).

The Sixth Circuit has adopted the "plain and express repudiation" doctrine as to when a claim accrues under 17 U.S.C.§507(b). *Ritchie v. Williams,* 395 F.3d 283, 288 n.5 (6th Cir. 2005); see also *Roger Miller,* 477 F.3d at 390; and *Diamond v. Gillis,* 357 F.Supp.2d 1003 (E.D. Mich. 2005). "[A] joint authorship claim arises and an author is alerted to the potential violation of his rights when his authorship has been expressly repudiated by his co-author." *Brownstein v. Lindsay,* 742 F.3d 55, 70 (3rd Cir. 2014)("*Brownstein*"). Noting there is a difference between actions between an owner and unknown third party and closer relationships, such as when the parties are co-authors, the statutory period for any action to establish ownership begins to run whenever there is an "express repudiation" of ownership by one party as against the other. *Ritchie v. Williams,* 395 F.3d at page 289 n.5 (citing *Aalmuhammed v. Lee*, 202 F.3d 1227, 1230-31 (9th Cir. 2000)("*Aalmuhammed*") and *Zuill* 80 F.3d at 1369). This rule looks for evidence that a co-author has acted adversely to the status of the other co-author, and operates "something like adverse possession." *Zuill,* 80 F.3d at 1370.

"There is no comprehensive list of types of statements or activities that constitute "plain and express repudiation of co-ownership.'" *Ford v. Anthony L. Ray*, Case 2:15-cv-00432-RSL at p.4 (W.D. Wash. September 11, 2015). Courts have found one act to qualify as plain and express repudiation, while other Courts have found the necessity of a number of "storm warnings." Declarations of parties, letters written, copies of album labels, credits and covers are appropriately considered for evaluating the timeliness of claims. *Id.* at p.3  Courts have found communications between parties where one claims to be the "sole author" or that the other party is not a co-author sufficient for repudiation.  See *Zuill*.  In *Ritchie v. Williams,* 395 F.3d 283,

12

because plaintiff expressly told defendants in a letter that plaintiff had exclusive ownership of songs he had written which "made it clear that he regarded the songs he had written as his songs", that letter alone allowed the Court to find repudiation to start the running of the statute of limitations. *Ritchie v. Williams,* 395 F.3d at 288. Plain and express repudiation considerations also include overhearing a conversation or argument including sole authorship claims, or the claim of sole ownership or authorship in an agreement, or as in *Zuill* and *Gaiman v. McFarlane*, 360 F.3d 644, 652 (7th Cir. 2004), if a direct letter was sent that states all rights will continue to be owned by one of the parties. Courts assess whether any statements in the relevant agreements were hostile or adverse to plaintiff's authorship, and evidence that a co-author has otherwise acted adversely and hostile to the status of the co-author. *Brownstein,* 742 F.3d at 71.

Courts applying the "plain and express repudiation" doctrine have also noted and/or found joint authorship can be expressly repudiated when a co-creator makes declarations that he was the sole owner of contested copyrights in a contract, or when a contested co-author saw copyright notices or a published version of the work without attribution to him. *Zuill*, 80 F.3d at 1368.

*Zuill*'s requirement is that repudiation be communicated to the claimant. *Zuill,* 80 F.3d at 1371. In *Ford,* communication to the claimant was found when the claimant saw the labels of albums, CD packaging, and the single record that all showed another party being credited with sole authorship, and where the claimant was conspicuously excluded for 20 years.

Courts have also found that constructive knowledge of Plaintiff's claims of repudiation to be considered. Public documentation can be considered in finding express repudiation. *Cambridge,* 510 F.3d 77, and see *World Wide Video, LLC v. Pagola and Yoko Ono,* Case 1:08-cv-10391-RWZ at page 16 (D. Mass. April 15, 2008), "[t]here can be little doubt that Mrs.

Lennon's 2002 recordation [with the Copyright Office] was an 'express repudiation' of plaintiff's ownership claims."  In our case, the 1980 Release was recorded; Plaintiff's 2011 notice to terminate was recorded; and Sony recorded various documents in the Copyright Office starting in 1985 that included the SCs, which documents credited Plaintiff as sole author as evidenced by Mo. Ex. H (EVERLY 000001, 000006-7, 000012-14, 000016, 000025-28, 000033, 000040, 000043, 000045-46, 000054, 000058, 000061)

Applying the law to our case, there can be little doubt, and it is clearly undisputed that Plaintiff's letter and/or phone call to Phil Everly prior to June 1980, without more, was an "plain and express repudiation" of Phil Everly's co-authorship.  It was "an open[] and quite notorious" claim of sole authorship by Plaintiff. See *Cambridge,* 510 F.3d at 91. Any review of the undisputed material facts reveal Plaintiff's repudiation sometime prior to June 10, 1980. It doesn't matter that Phil Everly disagreed with, was angry about, or that he thought Plaintiff's demands were asinine. What matters are Plaintiff's words, actions and deeds. See *Netzer v. Continuity Graphics Associates, Inc.*, 963 F.Supp. 1308, 1315 (S.D.N.Y. 1997)("[a]n express assertion of sole authorship or ownership will start the copyright statute of limitations running"). One communication from Plaintiff to Phil Everly resulted in Phil Everly signing the 1980 Release, relinquishing all rights to Songwriter Royalties, and Plaintiff being designated as the sole author.  JE Dep 99:7-16.

The undisputed facts show that prior to June 1980, Plaintiff clearly communicated to Phil Everly, just like in *Ritchie,* that Plaintiff regarded the songs Plaintiff had written as his own ("My songs were mine again. I had written them and that was it." DE Dep 20:15-18), that he claimed exclusive authorship, and that he disputed Phil Everly's co-authorship. *Ritchie*, 395 F.3d at 288. He asserted his sole authorship claims directly to Phil Everly by demanding he relinquish his

rights, "absolve" writership, and remove his name.  JE Dep 28:9-19, 28:25, 29:1-6; 37:12-14, 37:16-17.  He claimed legally he was the sole author.  Don Everly Decl. at ¶24.

Thus, Defendants cannot establish a timely claim of authorship, and as a result, Plaintiff should be declared the sole author of the SCs with Defendants precluded, as a matter of law, from pursuing any rights under Sections 203 and 304 with respect thereto.

Although plain and express repudiation should be sufficient from Plaintiff's demands in 1980 alone, what resulted and followed from those demands is persuasive as well. There may be a dispute as to the meaning of the language in the 1980 Release and whether or not it is a grant, however, it is undisputed that Phil Everly signed the 1980 Release in response to Plaintiff's demands that he remove his name.  In fact, even without the 1980 Release, this Court can find "plain and express repudiation" prior to June 10, 1980.  But to also have a document in that context that contains language whereby Phil Everly released his claims as "co-composer" and "every claim of every nature…as to the composition[sic] of said songs" is compelling, especially in light of Defendants' own witnesses' testimony that Phil Everly was clearly aware of the ramifications of Plaintiff's demands. JP Dep 14:3-25, 18:24-25, 19:1. Phil Everly himself acknowledged Plaintiff's actions when he was quoted in the 1984 Roger White biography of the Everly Brothers, Walk Right Back, admitting to Wesley Rose, his former manager and then-current publisher and owner of the SCs, that earlier song credits had been incorrect but that had been resolved in 1980, and with respect to *Cathy's Clown*, he was giving it to Don.  Walk Right Back, at page 64. DE Dep Exh. 2.

"Phil had told me that he made an agreement with Don to remove himself as writer of '*Cathy's Clown*.' There is possible evidence of this in the copyright office. Please see the screenshot here showing a document, perhaps two documents, executed June 1, 1980 and June

15

10, 1980. They are described in "Notes" as "Release and assignment' I would suspect that this recorded document(s) is what released and assigned whatever claim Phil had back to Don…" Mo. Ex. J (September 25, 2014 e-mail from Lewis Anderson to Patti Everly at 1:31PM. LA no Bates Stamp).

Business and public records were adjusted to remove Phil Everly's name as a co-author of the SCs.  Phil Everly was no longer entitled to receive Songwriter Royalties, and in fact, he received royalty statements that included a special designation regarding the SCs ("EFFECTIVE BEFO…") alerting him of this change in status. Mo. Ex. M (PE 000053-57).  "Awareness that one is not receiving royalties also puts one on notice of the basis for a copyright co-ownership claim." *Cambridge*, 510 F.3d at 90).

Record labels, liner notes and the like designated Plaintiff as the sole author after 1980. One need look no further than Reba McEntire's award-winning version of *Cathy's Clown*. Plaintiff attended and received sole authorship accolades for *Cathy's Clown* in 1990, and posed openly and notoriously for the promotional photographs as the sole author.  In the booklet for the 1994 definitive Everly Brothers box set released by Rhino Records entitled Heartaches & Harmonies[1], Phil Everly was not credited as an author of *Cathy's Clown*. Mo. Ex. H (EVERLY 000220-221, 000223-225). "Awareness that one is not being credited in the same manner as other authors starts the statute of limitations running for copyright co-ownership claims." *Aalmuhammed* 202 F.3d at 1231.

And Plaintiff continued to pursue his legal claim as sole author long after 1980.  He attempted to correct the copyright registrations for the SCs in 2011. He filed his notice of termination for the SCs in 2011. Once Plaintiff learned, in 2016, that Defendants' filed the notice

---

[1] Credits read "Very special thanks to DON & PHIL EVERLY for their participation in this collection." Rolling Stone calls this the "definitive" box set and one "the best box sets ever." Rolling Stone Album Guide, 4th ed. (2004) at p.288. EVERLY 000076, 000079.

16

purporting to terminate the 1980 Release, he authorized his counsel to file a counter-notice in 2017, Mo. Ex. H (EVERLY 000070-73), and then consequently, he brought this action.

Phil Everly had every motivation to challenge or dispute Plaintiff's repudiation of his co-authorship of the SCs. He understood clearly what was being demanded of him in 1980, and for the rest of his life, Phil Everly never disputed Plaintiff's sole authorship. Don Everly Decl. at ¶19; JE Dep 64:11-20, 90:8-17. He never once challenged the removal of his name from *Cathy's Clown* with Sony or BMI, or hired a lawyer or consultant to do so for him. PE Dep 30:16-24. From 1980 to his death in 2014, Phil Everly never approached Plaintiff to say the 1980 Release was wrong and he was a co-writer. Don Everly Decl. at ¶19; DE Dep 21:17-23. Phil Everly's son gave emphatic testimony that he had to hear about Plaintiff's repudiation for 48 years JE Dep 40:20-21, and Phil Everly's wife heard about it for "20 years how upset he was about it." PE Dep 29:18-22. According to his son, "[Phil] was mad he had to eat crow and let Donald tell the story that he wrote it by himself on camera and it was a bit humiliating actually…" JE Dep 93:2-6. He felt giving up *Cathy's Clown* was "the biggest mistake he ever made". TB Dep 22:21-25, 23:1, and hoped his brother would choke on the guilt of cashing the royalty checks for *Cathy's Clown*. JE Dep. 66:15-25, 67:1-17.

From the moment Plaintiff demanded sole authorship credit of the SCs, the statute of limitations started. Phil Everly had ample means and opportunity to address the dispute throughout the years. He remained angry and regretful for the rest of his life, but never did.

Defendants cannot now 37 years later, first raise a challenge to Plaintiff's repudiation of Phil Everly's co-authorship with respect to the SCs. Plaintiff relied for decades on Phil Everly's acquiescence to the repudiation and the terms of the 1980 Release. In fact, many interested third parties relied on that 1980 Release for over three decades. That is a significant period of time

17

devoted to these SCs on the understanding and belief, clearly reasonable, that Plaintiff was the sole author. Everybody acted in accordance with that belief. Stability of title and enhancing predictability and certainty of copyright ownership is the express purpose and policy for copyright laws and protections. See *Zuill* and *CCNV*. After so many years, and because Phil Everly chose to take no action, any claim by Defendants to co-authorship of the SCs and the derivative right of exercising an author's termination rights in Sections 203 and 304, is time-barred. Once sole authorship is asserted, a co-author claimant cannot lie in the weeds for decades after his claim of authorship is repudiated. *Zuill,* 80 F.3d at 1370-71.

For the foregoing reasons, Plaintiff respectfully requests that the Court find on summary judgment, in favor of Plaintiff.

## II. If the Court finds Phil Everly to be an author, then by the admission of Defendants, and the law, the 1980 Release is not a grant of copyright or any right of copyright and is therefore, not subject to termination under Sections 203 and 304.

The rights to terminate copyright grants under Sections 203 and 304, are applicable to an "exclusive or nonexclusive grant of a transfer or license of copyright or of any right under a copyright" (or the renewal copyright). The grant of the songwriter's share of royalties derives from contractual rights and not copyrights. In *Yount v. Acuff Rose-Opryland*, 103 F.3d 830 (9th Cir. 1996), the Court found "…holding a royalty interest does not bespeak an interest in the underlying copyright itself – a royalty is simply an interest in receiving money when the owner of the copyright exploits it." In *Fain v. Irving Trust Co. (In re: Waterson, Berlin & Snyder Co.),* 48 F.2d 704, 709 (2d Cir. 1931), the Circuit Court points out that the case "happened" to involve composers, but nothing more. *Waterson* does recognize that the obligation to pay royalties cannot be severed from the ownership of the copyright itself and then destroyed in bankruptcy. But it only means the copyright owner will always be burdened with the concomitant contractual

18

obligation of paying royalties, and to that end, ownership and obligation are inextricably intertwined, *but that does not increase the royalty holder's rights or protections beyond those set forth in the contract.* "Because the royalty does arise out of the contract itself, it is that contract which governs the rights of a holder of a royalty interest." In *Yount v. Acuff Rose-Opryland*, 103 F.3d at 835 "[w]hen [the writer] transferred the underlying copyright, he obtained a contractual right to royalties. He no longer had a copyright; he had a mere contractual right – a promise by 4Star that it would make royalty payments. At that point, federal copyright law essentially ceased to be concerned with how that contractual royalty right or assignments of it would be enforced." *Id.* The Court in *Rodrigue vs. Rodrigue*, 218 F. 3d 432 (5th Cir. 2000) acknowledged that "[n]otably absent from the Copyright Act's exclusive sub-bundle of five rights is the right to enjoy the earnings and profits of the copyright."

It is undisputed that Acuff Rose Publications owned 100% of the worldwide copyright and all rights under copyright in the SCs when Phil Everly executed the 1980 Release. Phil Everly owned no rights to copyright at that time. The only right he may have had was one-half of the Songwriter Royalties under the 1960 Grants payable by Sony, which is a right arising by contract and not copyright. Defendants appear to be in agreement with this conclusion:

> …the 1980 Release, at best, granted Don the right to collect only certain royalties in connection with the exploitation of the Compositions. Further, the 1980 Release specifically acknowledged Acuff-Rose's ownership of the Compositions….Because Acuff-Rose retained all copyright ownership in the Compositions, Phil did not have the ability to transfer any copyright ownership in the Compositions to Don under the 1980 Release; rather, Phil was transferring ***his contractual right*** [emphasis added] to collect certain royalties in connection with the Compositions. Federal case law clearly demonstrates that royalty rights are contractual rights, rather than exclusive rights under federal copyright law. [Compl. Exh. D]

Plaintiff respectfully requests the Court to find, on summary judgment, that the 1980 Release is not subject to termination under Sections 203 and 304, and therefore Defendants' notice purporting to terminate the 1980 Release is invalid and ineffective.

## CONCLUSION

For the above reasons, Plaintiff requests that this Court grant its motion for summary judgment and summarily dismiss all claims of Defendants, declare Plaintiff as the sole author of the SCs, declare that Plaintiff's notices of termination are the sole valid notices with respect the SCs, declare Plaintiff is the owner of 100% of the U.S. Termination Rights and Songwriter Royalties, or alternatively, narrow the issues for trial by invalidating Defendants' notice purporting to terminate the 1980 Release, and awarding attorney's fees if deemed appropriate by the Court.

Respectfully submitted,

 /s/ Linda Frances Howard
LINDA FRANCES HOWARD (#16557)
Adams and Reese LLP
901 18th Avenue South
Nashville, Tennessee  37212
(615) 341-0068
linda.edellhoward@arlaw.com

 /s/ Philip M. Kirkpatrick
PHILIP M. KIRKPATRICK (#06161)
Adams and Reese LLP
424 Church Street
Nashville, Tennessee  37219
(615) 259-1450
phil.kirkpatrick@arlaw.com

20

## CERTIFICATE OF SERVICE

I hereby certify that a true and exact copy of this motion for summary judgment was filed electronically this the 23rd day of July, 2018.  Notice of this filing was served via the Court's Electronic Case Filing system to all parties and counsel listed on the electronic filing receipt:

Jay S. Bowen
Shackelford, Bowen, McKinley & Norton LLP
47 Music Square East
Nashville, TN 37203

Lauren M. Spahn
Shackelford, Bowen, McKinley & Norton LLP
47 Music Square East
Nashville, TN 37203

Copies may also be accessed through the Court's ECF system.


/s/ Philip M. Kirkpatrick

21