IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| ISAAC DONALD EVERLY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 3:17-cv-01440 |
| | ) | Judge Trauger |
| PATRICE Y. EVERLY, PHILLIP J. EVERLY, CHRISTOPHER EVERLY, THE PHILLIP EVERLY FAMILY TRUST and EVERLY AND SONS MUSIC (BMI) | ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

---

### DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
---

Defendants Patrice Y. Everly, Phillip J. Everly, Christopher I. Everly, The Phillip Everly Family Trust, and Everly And Sons Music (BMI) (collectively, the "Defendants"), hereby respond in opposition to the Motion for Summary Judgment of Plaintiff Isaac Donald Everly as follows:

### Introduction

Plaintiff has moved this Court for summary judgment, on the issue of authorship and ownership of the copyright termination rights in the subject compositions, *Cathy's Clown*, *Sigh, Cry, Almost Die*, and *That's Just Too Much* (the "SCs"), asserting that the dispute is about "the authorship of musical compositions"; that the dispute arose circa 1980 when Plaintiff Don Everly "repudiated" Phil Everly's authorship of those compositions; and that, therefore, Counter-Plaintiff Phil Everly's "claim of authorship" accrued in 1980 and is barred by the three-year statute of limitations, 17 U.S.C. § 507(b). For the following reasons, Plaintiff's motion – which highlights numerous disputed issues of material fact – should be denied.

First, the United States Copyright Act's (the "Act") three-year statute of limitations (17 U.S.C. § 507(b)) is inapplicable to the analysis of the 1980 Release, as the language of the 1980 Release relates only to the issues of money and public credit – not ownership of the copyright (which had been conveyed to Acuff-Rose as publisher of the SCs in 1960), or authorship of the songs, which both Don and Phil had warranted was their joint work in the 1960 Single Song Agreement.

Even if the three-year statute of limitations is applicable, the "plain and express repudiation" standard requires a factual analysis, which the Plaintiff fails to provide. The record in this case highlights the complexity surrounding this factual analysis. Such factual issues cannot be decided on a motion for summary judgment.

Lastly, the interpretation of the contents of the 1980 Release and its applicability to Sections 203 and 304 of the Copyright Act present genuine issues of material fact that cannot be determined on a motion for summary judgment.

Respectfully, summary judgment should be denied, so that the Court can determine the numerous factual issues presented by Plaintiff relating to <u>all counts</u> addressed in Plaintiff's Motion for Summary Judgment.

**Factual Background**

**I.    The Parties.**

Don and Phil Everly were brothers and members of the musical group the Everly Brothers. The Everly Brothers signed with Warner Bros. Records ("WB") in 1960 and cowrote a number of hit singles during their ten-year term with the label. Compl. Ex. A (containing the 1960 agreement between Don and Phil Everly and Acuff-Rose Publications for "Cathy's Clown" ("WHEREAS, the Composers have written and composed a new and original musical composition entitled:

2

Case 3:17-cv-01440   Document 22   Filed 08/10/18   Page 2 of 13 PageID #: 403

CATHY'S CLOWN;" "The Composers represent that they are the sole author and composer of the music and lyrics constituting the musical composition."). *Cathy's Clown*, which was released in April 1960, was one of the most successful Everly Brother's singles released by WB.

The dynamics between Don and Phil Everly are infamous in music history. Phil, the younger of the two, was known for being quiet and nonconfrontational. PJE Dep 22:18-24 ("He was so self-effacing it was almost absurd. He is the last person to take credit for anything. … His whole life, you could ask anybody that knew him, he would never take credit for anything."; Deposition of Patrice Everly ("PE Dep") 13:12-15 ("From what I saw, Phil just kind of backed down all the time, you know. Don would hoot and holler and Phil would just kind of, you know, he didn't like confrontation")., whereas Don, the older of the two was known for being the more dominant brother. PJE Dep 13:21-14:1 ("My father was, I'm pretty sure, from what I deduced, tired of being sort of pushed around. He was not the dominant one in the relationship at that point, and he was tired of banging heads with his brother, and his brother doing what he wanted to do…"); Deposition of Joey Paige ("JP Dep") 11:24-12:1 ("…Phil is, like, little Phil, you know, younger Phil. So he was – Donald was the dominant person in that duo.").

## II. The SCs.

Phil and Don Everly cowrote the musical compositions *Cathy's Clown, Sigh, Cry, Almost Die* and *That's Just Too Much*. The copyright registrations for the SCs list both Don and Phil Everly as co-authors. Compl. Ex. B. Don and Phil Everly both signed single song agreements with their music publisher, Acuff-Rose Publications, Inc. (with Sony/ATV as successor in interest), which granted 100% of the worldwide copyright in the SCs to Acuff-Rose. Compl. Ex. A.

### III. 1980 Release.

Sometime in 1980, after almost 10 years of no communication between the brothers, Don reached out to Phil to discuss the SCs. PJE Dep 11:19-20 ("…they hadn't been speaking for – since 1973," 13:4-9 ("Q. Did you tell us they hadn't spoken since 1973? A. No, they had not … Actually, let me amend that because they did speak at their father's funeral … which I think was '77 or '76. Q. But other than that – A. No."); Deposition of Don Everly ("DE Dep") 18:2-3 ("And I didn't speak to him for ten years. I think it was almost ten years."); JP Dep 12:20-13:3 ("I knew it was Donald right away because, you know, Phil said, 'Hi, Don,' you know, and I don't think they were really talking at that time period as well. It was a little while after that to when they got back together. But then the conversation got very violent verbally and, you know, Phil was saying, "How can you do this to me?' And, 'You know I wrote half that song,' you know verbiage like that."). Sometime after the conversation, Phil Everly signed a document that addressed only the issues of money and public credit with regards to the SCs. Compl. Ex. C.

### IV. Aftermath of the 1980 Release.

Prior to his death on January 3, 2014, Phil Everly engaged Lewis Anderson (2007) and Copyright Recapture (2012) to file copyright notice of terminations for numerous musical compositions. After Phil's death, the Defendants had great difficulty connecting with Copyright Recapture, and conversely, re-engaged Lewis Anderson to file additional copyright notices of termination. Compl. Ex. G & H. Lewis Anderson discovered that the copyright notices of terminations supposedly filed by Copyright Recapture had in fact not been filed at all. Deposition of Lewis Anderson ("LA Dep") 27:23-28:3 ("Patti asked me if I could provide the McBride file, the copyright recapture prepared notice. But I never found any evidence of it. My recollection is I checked with Sony and I checked with the copyright office and I found nothing."). Defendants,

through the counsel of Lewis Anderson, prepared a number of copyright notices of termination, including the prior titles that were supposed to be filed by Copyright Recapture, as well as the SCs. LA Dep 29:1-34:17.

## Legal Analysis

### I. The Statute of Limitations is Inapplicable.

Plaintiff incorrectly urges application of the statute of limitations at 17 U.S.C. § 507(b) to the SCs. Prior to Plaintiff filing the Complaint, there was no claim by Plaintiff as to either the ownership or authorship of the SCs. Accordingly, any relevant claim by Don for copyright ownership did not begin to accrue until shortly before the Complaint was filed, making the accrual of any claim for ownership of the termination rights, or authorship, well within the three-year time period. As such, Plaintiff's motion for summary judgment should be denied. Regardless, as set forth below, there are disputed issues of material fact that preclude summary judgment. Accordingly, Plaintiff's motion for summary judgment should be denied.

### A. The Three-Year Statute of Limitations Does Not Bar Phil's Claim for Authorship and Ownership of the Termination Right.

The Copyright Act provides that "no civil action shall be maintained under the provisions of this title unless it is commenced within three years after the claim accrued." 17 U.S.C. § 507(b). The statute of limitations does not begin to run until "the plaintiff can file suit and obtain relief." Petrella v. MGM, 134 S. Ct. 1962, 1969, 188 L. Ed. 2d 979, 988, 2014 U.S. LEXIS 3311, *14, 110 U.S.P.Q.2D (BNA) 1605, 1610, 82 U.S.L.W. 4361.

There are factual issues surrounding the applicability and accrual of the statute of limitations, thereby making Plaintiff's motion for summary judgment improper. The statute of limitations in relation to copyright actions does not begin to run, and a claim does not accrue, until the party "knows or has reason to know of the act which is the basis of the claim." *Cambridge*

5

*Literary Prop., Ltd. v. W. Goebel Porzellanfabrik G.m.b.H. & Co. KG,* 510 F.3d 77, 81 (1st Cir. 2007). This determination of knowledge requires an in-depth analysis into the facts of the so called "claim". As explained herein, there are numerous factual issues in the case at hand regarding when the Defendants would have learned, or whether they even knew of the authorship or ownership claims prior to the filing of the Complaint. Therefore, because the existence of this knowledge is a question of fact in this case, determination on motion for summary judgment is improper.

Plaintiffs incorrectly point to the 1980 Release, and the events and circumstances surrounding the 1980 Release, to claim that the three-year statute of limitations began to accrue when it was executed. However, the 1980 Release addresses only the issues of money and public credit to be given for the songs between Don and Phil Everly, not authorship or ownership of the SCs. Pl. Mot. Summ. J. 380 ("the right to royalties and other income arising out of the said compositions."). In fact, the 1980 Release acknowledges that the copyright ownership in the SCs did not belong to Phil or Don Everly, but rather to Acuff-Rose Publications. *Id.* ("the copyrights of which were obtained in 1960 by Acuff-Rose Publications, and **which are still owned by them**") (emphasis added). There is no statement contained in the 1980 Release that Phil did not write the SCs, let alone that renounces Phil Everly's authorship contribution to the SCs. In fact, Plaintiff, himself, had acknowledged Phil's contribution as an author of *Cathy's Clown* **after** the 1980 Release was signed. Deposition of Don Everly Ex. 6 (R+R Clip: "…Cathy's Clown. We walk in and it was… they were pressing us really desperately for a record because it was our first record on Warner, and he says "The guys, they don't have Archie. They don't have this. They're not gonna do it. They're not gonna come up with anything." And we kept pitching the songs. "Go in the studio." We wouldn't go in. Finally, I started a song, called Phil over, he came over and we worked—we hashed it out and went in the studio and told them we wanted, basically [inaudible]

6

walking, marching "Here he comes [singing]; Frost clip at 00:11-00:14 ("Cathy's Clown was written together."). At the least, there are fact issues on the issue of whether Don had "repudiated" Phil's authorship in the SCs prior to shortly before the suit was filed.

Because Phil had no reason to question the ownership of the copyrights, nor that he co-wrote the SCs, Defendants had no reason to file suit to determine the ownership or authorship of the SCs. Accordingly, the three-year bar set forth in 17 U.S.C. § 507(b) did not begin to accrue until Phil's estate received a demand letter on October 6, 2017. Defendants asserted their claim of authorship and of ownership of the termination right in their Counterclaim and Prayer for Relief on November 29, 2017, which was well within the three-year statute of limitations.

## II. Even if the Statute of Limitations is Applicable, There was no Plain and Express Repudiation of Ownership and/or Authorship Until Shortly Before Suit Was Filed in 2017.

The Sixth Circuit has adopted the "plain and express repudiation" doctrine as to when a copyright ownership claim accrues under 17 U.S.C. § 507(b). A claim for copyright ownership "is barred three years from 'plain and express repudiation' of authorship." *Roger Miller Music, Inc. v. Sony/ATV Publ'g, LLC*, 477 F.3d 383, 390 (6th Cir. 2007); *Ritchie v. Williams*, 395 F.3d 283, 288 n.5 (6th Cir. 2005) (citing *Aalmuhammed v. Lee*, 202 F.3d 1227, 1230–31 (9th Cir. 2000). There is no bright line rule to determine what constitutes "plain and express repudiation", as courts typically examine a variety of factual circumstances and conduct a factual analysis to make this determination. Any number of events could trigger the statute of limitations for a copyright ownership claim. *Gary Friedrich Enterprises, LLC v. Marvel Characters, Inc.* 716 F.3d 302, 317 (2d Cir. 2013); *Roger Miller Music, Inc.*, 477 F.3d at 390 (court determined that audit letter which did not address ownership of the renewal copyrights was not a plain and express repudiation); *Aalmuhammed,* 202 F.3d at 1231 (court decided that conversation that included statements which

left question of authorship open for further discussion posed a genuine issue of fact for trier of fact as to whether there was a plain and express repudiation); *Gomba Music Inc. v. Avant,* 225 F. Supp. 3d 627, 641-42 (E.D. Mich. 2016) (court looked at the circumstances surrounding a notice of dispute of the invalidity of a songwriter agreement, copyright registrations, and copyright assignments to conclude that issue of a plain and express repudiation was unclear and summary judgment was improper); *Brown v. Mojo Records,* CV 00-286-ST, 2000 WL 33244473, at *11 (D. Or. June 6, 2000) (court found that filing of lawsuit at hand was the first repudiation of co-ownership, after analyzing facts of case which indicated no prior plain and express repudiation).

A. <u>The Determination of a Plain and Express Repudiation of Ownership Requires Resolution of Genuine Issues of Fact That Preclude Summary Judgment.</u>

The determination of the existence of a plain and express repudiation of copyright ownership requires resolution of genuine issues of fact, causing summary judgment to be inappropriate. A genuine issue of fact exists when, based on the evidence, a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 248 (1986); *see also Scott v. Harris*, 550 U.S. 372, 380 (2007) (a genuine issue for trial exists when the record would lead a rational trier of fact to find for the nonmoving party). As acknowledged by Plaintiff in its motion, a genuine dispute between the parties on issues of material fact would render summary judgment inappropriate. Mem. Law Supp. Pl. Mot. Summ. J. 8 (citing *Anderson,* 477 U.S. at 247-49). Further, the materiality of a fact is determined by the substantive law applicable in the case. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1476 (6th. Cir. 1989).

Plaintiff points to a number of cases that apply the "plain and express repudiation" standard but fails to point out that a number of these cases determined that the issues at hand were factual in nature, and therefore, summary judgment was denied. *See Brownstein v. Lindsay*, 742 F.3d 55, 75 (3rd. Cir. 2014) (issue of whether defendant had expressly repudiated plaintiff's authorship was

8
Case 3:17-cv-01440   Document 22   Filed 08/10/18   Page 8 of 13 PageID #: 409

issue for jury and should not have been decided on motion for judgment as a matter of law); *Scorpio Music v. Willis*, No. 11 Civ. 1557, 2013 WL 790940, at *6 (S.D. Cal. Mar. 4, 2013) ("What Willis knew and when he knew it are factual issues that cannot be determined at this time.").

In the event that the statute of limitations does apply, the factual analysis required to determine "plain and express repudiation" – *i.e.* the circumstances surrounding the 1980 Release, the contents of the 1980 Release, and the aftermath of the 1980 Release – present genuine issues of material fact that render summary judgment inappropriate.

> B. The Communications Between the Plaintiff and Phil Everly Surrounding the 1980 Release Did Not Constitute to Plain and Express Repudiation.

Plaintiff asserts that "[t]he Court need not attempt to unravel the complex and complicated personal and professional relationship of Don and Phil Everly." Mem. Law Supp. Pl. Mot. Summ. J. 9. However, in order to understand the context and effect of the communications surrounding the 1980 Release, we must understand the dynamics of the relationship between Don and Phil Everly.

Don constantly belittled Phil and was demeaning and abusive. Deposition of Jacqueline Everly ("JE Dep") 22:9-13; Deposition of Teri Brown ("TB Dep") 25:10-16. In an effort to keep peace within the family, Phil always took the high road. PJE Dep 67:8-10. Because of this, "[Phil] was the last person to take credit for anything." PJE Dep 22:19-20), he "just kind of backed down all the time" because "he didn't like confrontation". PE Dep 13:12-15. Before Phil's father passed, Phil promised his father that he would do whatever he had to do to keep the peace between himself and his brother Don.  PJE Dep 101:6-13. Phil was a father figure to Don's children, as Don was not around often. PJE 17:2-16. In fact, because of the animosity between the brothers, prior to June 1980, Don and Phil Everly had not spoken in almost 10 years. DE Dep 18:2-3.

It is important to note that Don claimed that any communication surrounding the 1980 Release was done via a letter. DE Dep 19:3-6; however, there is no evidence of such letter, and accordingly, its content is nowhere in the record. In retrospect, Defendants offer testimony and witnesses that any communication occurred via a phone call. JP Dep 12:8-15. The fact that the parties differ on whether it was a letter or phone call, and the content of such communication, shows there is an issue of fact. Moreover, Plaintiff is unable to offer any evidence that "plainly and expressly" shows that, through whatever method the circumstances surrounding the 1980 Release were communicated – via letter or phone, ownership or authorship of the SCs was discussed.

In *Roger Miller Music*, Sony argued that its actions, including filing an application for renewal of the copyrights in Miller's songs; openly and exclusively licensing Miller's songs during their renewal term; and paying Miller royalties for Sony's exploitation of the renewal copyrights; amounted to a "plain and express" repudiation of Miller's ownership claims to the renewal copyrights in the songs. *Roger Miller Music,* 477 F.3d at 390. *Supra*. The *Miller* Court compared this situation to that in *Ritchie* in which plaintiff "expressly told the defendants, in a letter, that he had exclusive ownership of the songs he had written." *Ritchie v. Williams*, 395 F.3d 283, 288 (6th Cir. 2005); *Roger Miller Music,* 477 F.3d at 390. Specifically, the *Ritchie* court noted that Kid Rock's letter "made it clear that he regarded the songs he had written as his songs" and subsequently "claimed exclusive ownership" of the rights to those songs. *Ritchie*, 395 F.3d at 288. Unlike Kid Rock's letter in *Ritchie*, the letter at issue in *Miller* did not address ownership of the renewal copyrights and did not clearly claim ownership over those copyrights. *Roger Miller Music*, 477 F.3d at 390. Accordingly, the Court found that because there was no "plain and express"

repudiation of ownership, the district court correctly held that ownership claims were not time-barred. *Id*.

The case at hand is analogous to *Miller*. Like Sony, Don is arguing that filing a notice of termination for the SCs; licensing the SCs, including, *Cathy's Clown* to Reba McEntire; and not paying Phil royalties; amounts to a "plain and express" repudiation. Like the letter at issue in *Miller*, the 1980 Release does not "plainly and expressly" claim ownership or authorship in the SCs. Rather, it details the "copyrights of which were obtained in 1960 by Acuff-Rose Publications, and which are still owned by them") Pl. Mot. Summ. J. 380 ; PJE Dep 35:5-7; nor does it provide that Phil was not an author of the SCs. Neither did the 1980 Release address the issue of termination rights, which again, cannot amount to a "plain and express" repudiation of ownership of the termination rights, or authorship.

Lastly, Phil's (or his Estate's) "delay" in filing its own termination notices does not amount to a loss of his termination right. As with a copyright itself, a copyright renewal is a creature of statute. *Miller Music Corp. v. Charles N. Daniels, Inc.*, 362 U.S. 373, 375 (1960). One's entitlement to a copyright or a renewal is therefore determined by statute, *see Epoch Producing Corp. v. Killiam Shows, Inc.*, 522 F.2d 727, 743 (2d. Cir. 1975), and the statute nowhere suggests that one loses a right to renewals merely by delaying assertion of that right. *Hampton v. Paramount Pictures Corp.*, 279 F.2d 100, 104 (9th Cir. 1960) (mere lack of action does not amount to abandonment of copyright), *cert. denied*, 364 U.S. 882 (1960).

Accordingly, even if the three-year statute of limitations is applicable, Plaintiff fails to establish the nonexistence of a genuine issue of material fact when applying the "plain and express" repudiation standard. Such factual issues cannot be decided on a motion for summary judgment.

### III. The Applicability of Sections 203 and 304 of the Copyright Act and the 1980 Release Cannot be Determined on Summary Judgment.

The contents of the 1980 Release present an additional factual issue that cannot be decided on summary judgment. As previously stated above, and as stated in Plaintiff's motion and the 1980 Release, itself, ownership of the SCs belonged to Acuff-Rose Publications at the time of execution of the 1980 Release. Pl. Mot. Summ. J. 19. Phil Everly did not possess any ownership in the SCs that he could have assigned. Accordingly, Sections 203 and 304's applicability, if any, to the 1980 Release depends on this Court's interpretation of the document.

Plaintiff correctly and clearly articulates in its motion that "[t]here may be a dispute as to the meaning of the language in the 1980 Release and whether or not it is a grant." *Id.* at 15. This proposition is accurate for at least two reasons. First, Defendants assert that the 1980 Release is unrelated to either ownership or authorship; and, secondly, that Section 203 expressly makes any attempted transfer of the termination right ineffective, as a matter of law. Accordingly, the interpretation of the language contained in the 1980 Release, and any applicability of Sections 203 and 304 to such transaction, pose an issue of fact. Plaintiff's admission that the language contained in the 1980 Release presents a factual issue that remains to be determined illustrates that Plaintiff has failed to meet its burden, as the moving party, to establish the nonexistence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 330 (1986).

Therefore, for the reasons stated above, with regards to Plaintiff's Count II, the contents of the 1980 Release present a genuine issue of material fact that cannot be decided on a motion for summary judgment.

### Conclusion

For the foregoing reasons, Defendants respectfully submit that Plaintiff's Motion for Summary Judgment should be denied.

Respectfully submitted,

/s/ Jay S. Bowen

**Jay S. Bowen** (#2649)
**Lauren M. Spahn** (#32377)
Shackelford, Bowen, McKinley & Norton LLP
47 Music Square East
Nashville, TN 37203
Telephone: (615) 256-7200
Facsimile: (615) 329-4485
JBowen@shackelfordlaw.net
LSpahn@shackelfordlaw.net

*Attorneys for Defendants Patrice Y. Everly, Phillip J. Everly, Christopher I. Everly, The Phillip Everly Family Trust And, Everly And Sons Music (BMI)*

## CERTIFICATE OF SERVICE

I certify that on August 10, 2018, I served a copy of the foregoing Response in Opposition to Plaintiff's Motion for Summary Judgment by U.S. Mail, Electronic Mail and/or the Court's Electronic Filing System on:

Linda Frances Howard
Adams and Reese LLP
901 18th Avenue South
Nashville, Tennessee 37212

Philip M. Kirkpatrick
Adams and Reese LLP
424 Church Street
Nashville, Tennessee 37219

/s/ Jay S. Bowen
Jay S. Bowen