IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| **ISAAC DONALD EVERLY,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Case No. 3:17-cv-01440** |
| ) | **Judge Aleta A. Trauger** |
| **PATRICE Y. EVERLY, PHILLIP J.** ) | |
| **EVERLY, CHRISTOPHER EVERLY,** ) | |
| **THE PHILLIP EVERLY FAMILY** ) | |
| **TRUST and EVERLY AND SONS** ) | |
| **MUSIC (BMI),** ) | |
| ) | |
| **Defendants.** ) | |

## MEMORANDUM

Before the court is the Motion for Summary Judgment (Doc. No. 19), filed by plaintiff

Isaac Donald Everly, to which the defendants have filed a Response (Doc. No. 22), and the plaintiff

has filed a Reply (Doc. No. 24). For the reasons stated herein, the court will grant the motion.

## I.    FACTUAL BACKGROUND

The facts stated herein are either undisputed or viewed in the light most favorable to the

defendants as the non-movants, unless otherwise indicated.

Isaac Donald Everly ("Don" or "Don Everly"), the plaintiff in this action, and Phillip

Everly ("Phil" or "Phil Everly"), who died in 2014, are brothers and were members of the music

group, the Everly Brothers. (Doc. No. 19-1 ¶ 2.) The Everly Brothers dissolved and Don and Phil

Everly stopped speaking in 1973. (*Id.* ¶ 11.) "[I]t was not a friendly breakup." (Doc. No. 19-3,

Jason Everly Dep. 11.[1])

---

[1] The deposition transcripts filed by the parties are condensed versions, containing four
pages of the original transcript on each page. Some of the transcripts are excerpts rather than

Phil Everly is survived by his third wife, Patrice Everly ("Patti" or "Patti Everly"), and two sons, Phillip J. Everly ("Jason" or "Jason Everly") and Christopher Isaac Everly ("Chris" or "Chris Everly"). Patti, Jason, and Chris Everly are the defendants in this action.

One of the Everly Brothers' most famous hits was the song "Cathy's Clown," which was recorded for Warner Bros. Records and released in 1960. The songs "Sigh, Cry, Almost Die" and "That's Just Too Much" were also recorded for Warner Bros. and released later the same year. (Doc. No. 19-1 ¶ 4; Doc. No. 1-2; Doc. No. 19-9.)

Don and Phil Everly are both listed as "authors" on the original copyright registrations for the musical compositions "Cathy's Clown," "Sigh, Cry, Almost Die," and "That's Just Too Much" (collectively, the "Subject Compositions"). By agreements dated March 21, 1960 and July 19, 1960 (the "1960 Grants"), Don and Phil Everly assigned 100% of the worldwide copyright in the Subject Compositions to Acuff-Rose Publications ("Acuff-Rose"). (Doc. No. 1-1; Doc. No. 19-9, at 19–20, 23–24.) Even after assigning the copyrights in the Subject Compositions to Acuff-Rose, Don and Phil Everly retained a right to a portion of the worldwide royalties derived from the exploitation of the Subject Compositions (the "Songwriter Royalties"). From 1960 to 1980, "Cathy's Clown" was credited on all copies as having been authored by both Don and Phil, and they shared the Composition's Songwriter Royalties equally. (Compl. ¶ 21; Answer ¶ 21.)

Don Everly now claims sole authorship of the Subject Compositions. (Doc. No. 19-1 ¶¶ 3, 6; Doc. No. 19-5, Don Everly Dep. 11, 22.) Although that contention is in dispute, there is no dispute that, sometime in 1980 but prior to June 1980, Don Everly contacted Phil, demanding that Phil's name be "taken off" of "Cathy's Clown." Patti Everly testified that Phil told her that he "no

---

complete copies. The page numbers provided herein are those assigned to the original deposition transcript.

longer had credit as a writer" on the song "Cathy's Clown," because Don "demanded that he take his name off." (Doc. No. 19-2, Patti Everly Dep. 29.) She knew that Phil was upset about this demand, "[b]ecause he talked about it for 20 years how upset he was about it." (*Id.*) Phil's friend, Joey Paige, testified that he was present when Phil received a phone call from Don sometime in 1980. The telephone conversation became "very violent verbally." (Doc. No. 19-4, J. Paige Dep. 12.) Phil was angry and agitated as a result of the conversation, the outcome of which was that he had told Don he was going to "give [Cathy's Clown] back to him." (*Id.* at 14.) Joey Paige counseled Phil not to do anything in haste, particularly because Phil disputed Don's claim to have written the song by himself. (*Id.*) Phil's son, Jason Everly, testified that he came home from school one day in 1980 to discover that his father was very upset. All Jason knew initially was that Phil had had a telephone conversation with Don. As a result of that phone call, Phil "did sign paperwork saying, 'I absolve myself of the writership'" of the song "Cathy's Clown." (Doc. No. 19-3, Jason Everly Dep. 28.)

In addition, in the wake of Don's demand, Phil Everly executed a document entitled "Release and Assignment" (the "1980 Release"), which was notarized on June 10, 1980. (Doc. No. 1-3; *see also* Doc. No. 19-4, Defs.' Resp. to Interrog. 6; Doc. No. 19-3, Jason Everly Dep. 28–29, 99.) According to Jason, after signing the 1980 Release, Phil Everly was aware as of 1980 "that his name had been taken off and that Don was listed as the sole writer of 'Cathy's Clown' and these other songs." (Doc. No. 19-3, Jason Everly Dep. 64.)

The 1980 Release, a single-page document, acknowledges that Don and Phil Everly had previously executed an agreement "transferring" the Subject Compositions to Acuff-Rose, as publisher and that the prior agreement "listed both Phil Everly and Don Everly as composers" of the Subject Compositions. (Doc. No. 1-3, at 2.) It reflects Phil Everly's "desire[] to release, and

transfer, to the said Don Everly, all of his rights, interests and claim in and to said compositions, including rights to royalties and his claim as co-composer, effective June 1, 1980." (*Id.*) Accordingly, in exchange for the recited consideration of "One Dollar ($1.00)," Phil Everly did

> transfer, release, assign and set over unto Don Everly all of his rights, titles, interests and claim to the musical compositions "CATHY'S CLOWN," "SIGH, CRY, ALMOST DIE," and "THAT'S JUST TOO MUCH," the copyrights of which were obtained in 1960 by Acuff-Rose Publications, and which are still owned by them. This transfer and release, which is effective June 1, 1980, includes not only the said Phil Everly's right to royalties and other income arising out of said compositions from and after the effective date, but also every claim of every nature by him as to the compositions of said songs.

(*Id.*) The 1980 Release further expressly authorized the performing rights society, Broadcast Music, Inc. ("BMI"), and Acuff-Rose to "correct their records accordingly and to make payments of amounts due and to become due to the said Don Everly solely on and after the effective date hereof." (*Id.*)

The 1980 Release was recorded in the United States Copyright Office shortly thereafter. (Doc. No. 19-9, at 2.) The 1980 Release was also filed with BMI and Acuff-Rose. (Doc. No. 19-1 ¶¶ 17, 18.) Thereafter, BMI and Acuff-Rose Publications modified their records to reflect that Don Everly was the sole "author" of the Subject Compositions (Doc. No. 19-11, at 2, 5–6), and they ceased payment of any Songwriter Royalties to Phil Everly (Doc. No. 19-5, Don Everly Dep. 22; Doc. No. 19-1 ¶18).

After execution of the 1980 Release and in accordance with its terms, Don Everly was publicly credited as the sole author of "Cathy's Clown" and was paid 100% of the songwriter's share of royalties for "Cathy's Clown." (Doc. No. 19-1 ¶¶ 20 and 24; Doc. No. 19-3, Jason Everly Dep. 45, 99.) After the filing of the 1980 Release, Sony issued hundreds of licenses designating Don Everly as the sole author of "Cathy's Clown." (Doc. No. 19-9, at 26–38.) In 1990, Reba McEntire's cover recording of "Cathy's Clown" earned the Robert J. Burton Award for BMI

Country Song of the Year, an award that was presented to Don Everly as the sole songwriter at an awards celebration that Don attended without Phil Everly. (Doc. No. 19-5, Don Everly Dep. 27–28; Doc. No. 19-1 ¶ 20.) Phil Everly was aware that Don Everly alone had been accorded this award. (Doc. No. 19-3, Jason Everly Dep. 19.) Prior to 1980, both Don and Phil Everly had been awarded songwriting honors for "Cathy's Clown" by BMI. (*See* Doc. No. 19-11, at 8–9 (program for 1961 BMI award dinner).)

From June 10, 1980, when the 1980 Release was executed, until his death in 2014, Phil Everly never brought a legal action to challenge Don Everly's claim of sole authorship of the Subject Compositions or the enforceability of the 1980 Release. (Doc. No. 19-2, Patti Everly Dep. 30.) He privately maintained, however, that he was a co-author of the song. (*See, e.g.*, Doc. No. 19-3, Jason Everly Dep. 67; Doc. No. 19-4, J. Paige Dep. 14.)

In January 1988, Acuff-Rose, as the "duly authorized agent of Don Everly," renewed the copyright to "Cathy's Clown." (Doc. No. 1-5.) Don Everly is the sole renewal claimant listed on the renewal form, and Don Everly alone is identified as the "author" of the words and music to "Cathy's Clown" in the Renewal Registration. (*Id.*)

In 2011, Don Everly engaged counsel to exercise his United States copyright termination rights ("Termination Rights") with respect to the Subject Compositions by filing a notice to terminate the 1960 Grants pursuant to 17 U.S.C. § 304(c)[2] and recapture 100% of the United States copyright in the Subject Compositions, effective April 14, 2016 and recorded in the U.S. Copyright Office effective July 15, 2011 (the "2011 Don Everly Notice of Termination"). (Doc. No. 1-6, at

---

[2] Section 304(c) provides that an author's "exclusive or nonexclusive grant of a transfer or license of the renewal copyright or any right under it, executed before January 1, 1978" may be terminated under certain conditions. Section 203(a) similarly provides for the termination of copyright grants, but it applies to grants executed by the author "on or after January 1, 1978."

4–5; Doc. No. 19-12 ¶ 12; Doc. No. 19-1 ¶ 21.) As a result of the exercise of his Termination Rights, Don Everly claims exclusive copyright ownership in the Subject Compositions.

Also in 2011, Don Everly authorized his attorney to file paperwork in the U.S. Copyright Office to remove Phil Everly's name as author of the Subject Compositions on the original 1960 copyright registrations. (Doc. No. 19-12 ¶ 13.) In response to that directive, Don's attorney filed forms with the U.S. Copyright Office stating, "Corrected Information: Delete Phil Everly," and further explaining,

> Copyright claimant/publisher, Acuff-Rose Publications, mistakenly listed Phil Everly as co-author, however, Don Everly is the sole author as confirmed by the agreement signed by Phil Everly . . . .

(Doc. No. 19-12, at 26–27, 30–31, 42–43.) The U.S. Copyright Office rejected the forms, explaining that corrections to pre-1978 copyright registrations had to be filed within 28 years of the initial registration. (*Id.* ¶ 13.)

In 2007, Phil Everly engaged Lewis Anderson to file notices of termination, that is, to exercise his Termination Rights, with respect to three specific songs, but not for the Subject Compositions. (Doc. No. 19-7, L. Anderson Dep. 19, 22–23, 28.) In 2012, Phil engaged Copyright Recapture to assist him in exercising his Termination Rights with respect to twenty-two additional songs. The Subject Compositions were not among these songs and were not listed on any of the notices of termination prepared by Copyright Recapture. (Doc. No. 19-13, at 9–25.) Other than unsubstantiated hearsay, there is no evidence that Phil ever made any attempt to recapture any rights he might have had with respect to the Subject Compositions.[3]

---

[3] Jason Everly testified that he believed Phil had made an effort to pursue his termination rights to "Cathy's Clown" prior to his death in 2014, stating that Phil had told him he was "interested to get it back." (Doc. No. 19-3, Jason Everly Dep. 20–21.) Lewis Anderson testified that Patti and Jason Everly told him that they believed Phil had meant to file a Notice of Termination for a number of songs, including "Cathy's Clown." (Doc. No. 19-7, L. Anderson Dep.

Following Phil's death in early 2014, Patti Everly and Jason Everly filed their own notice purporting to terminate the 1960 Grant and the extended renewal term of the copyright for "Cathy's Clown," among other compositions, effective November 14, 2016 (the "2014 Notice of Termination"), pursuant to 17 U.S.C. § 304(c). (Doc. No. 1-7, at 4–9.) According to Don Everly, Jason and Patti did not file notices purporting to terminate the copyright grants for "Sigh, Cry, Almost Die" and "That's Just Too Much" until after this lawsuit was filed. (*See* Doc. No. 21, at 7.) There is no actual evidence in the court's record regarding these later notices.

In 2016, Patti and Jason served on Don Everly a Notice of Termination (the "2016 Notice of Termination"), purporting to terminate all rights granted by Phil to Don Everly in the 1980 Release, pursuant to 17 U.S.C. § 203(a). (Doc. No. 1-8.)

## II. Procedural Background

Plaintiff Don Everly filed his Complaint for Declaratory Judgment (Doc. No. 1) on November 8, 2017, against Patti Everly, Jason Everly, and Chris Everly as the statutory successors to Phil Everly's U.S. Copyright Termination Rights under the United States Copyright Act ("Copyright Act"), specifically 17 U.S.C. §§ 304(c) and 203(a), and against the Phillip Everly Family Trust ("Trust") and Everly and Sons Music (BMI) (alleged to be an assumed name for the Trust (Doc. No. 1 ¶ 8)), as a legal owner or successor to Phil Everly's rights or as a legal owner of the statutory successors' rights (collectively "Defendants").

The factual allegations in the Complaint focus primarily upon "Cathy's Clown" as the "Composition" at issue, likely because, as indicated above, the defendants did not file notices to terminate the 1960 Grants for the other two works until after this lawsuit was filed. In his

---

27.) Anderson, however, never found any documentation of such an attempt. (*Id.* at 28.) He also testified that Phil never asked him to file a Notice of Termination related to "Cathy's Clown." (*Id.*)

Complaint, Don Everly seeks a judicial declaration that: (1) Phil Everly is not an "author" of "Cathy's Clown"; (2) the defendants are not the statutory successors of an "author" with respect to "Cathy's Clown" and are estopped from exercising any rights granted to "authors" of copyrighted works; (3) the 1980 Release is not a grant of a transfer or license of copyright or of any right under a copyright and, therefore, is not subject to termination pursuant to 17 U.S.C. § 203(a), thus invalidating the 2016 Notice of Termination of the 1980 Release; and (4) Don Everly owns 100% of the U.S. copyright in "Cathy's Clown" and 100% of the songwriter royalties derived from that work, as well as those for "Sigh, Cry, Almost Die" and "That's Just Too Much." (Doc. No. 1, at 12–3.)

The defendants filed an Answer, Affirmative Defenses, and Counterclaim (Doc. No. 5), on November 29, 2017. Their Counterclaim seeks declarations that Phil Everly is an author of "Cathy's Clown" under 17 U.S.C. § 203, that the defendants' Notices of Termination were valid under 17 U.S.C. §§ 304(c) and 203(a), and that the defendants are entitled to half of the income derived from "Cathy's Clown." (Doc. No. 5, at 7.) The Answer and Counterclaim do not reference the other two works.

Don Everly filed his Motion for Summary Judgment on July 23, 2018, accompanied by a Memorandum of Law, Statement of Undisputed Material Facts, and numerous deposition excerpts, declarations, and exhibits. (Doc. Nos. 19, 19-1 through 19-14, 20, 21.) Although the plaintiff never filed an amended complaint, the motion expressly seeks a declaration related to all three of the Subject Compositions. The defendants' Response presumes that resolution of the issues as they pertain to "Cathy's Clown" will be dispositive as to the other two Subject Compositions as well.

### III.     Legal Standard

Summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party moving for summary judgment can satisfy its burden by demonstrating "that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case." *Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005) (citation omitted). The fact that the evidence may be controlled or possessed by the moving party does not change the non-moving party's burden "to show sufficient evidence from which a jury could reasonably find in her favor, again, so long as she has had a full opportunity to conduct discovery." *Minadeo*, 398 F.3d at 761 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986)).

Once the moving party demonstrates that "there is an absence of evidence to support the nonmoving party's case," the non-moving party "must identify specific facts that can be established by admissible evidence, which demonstrate a genuine issue for trial." *Amini v. Oberlin Coll.*, 440 F.3d 350, 357 (6th Cir. 2006) (citing *Anderson*, 477 U.S. at 247–48; *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)). While the court must view the evidence in the light most favorable to the non-moving party, the party opposing the summary judgment motion "must do more than simply show that there is some metaphysical doubt as to the material facts." *Amini*, 440 F.3d at 357. The existence of a mere "scintilla of evidence" in support of the non-moving party's position is insufficient. *Daniels v. Woodside*, 396 F.3d 730, 734–35 (6th Cir. 2005) (quoting *Anderson*, 477 U.S. at 252). The non-moving party "may not rest upon [his] mere allegations," but must instead present "significant probative evidence" establishing that "there is a genuine issue for trial." *Pack v. Damon Corp.*, 434 F.3d 810, 813–14 (6th Cir. 2006) (citations omitted).

While a moving party *without* the burden of proof need only show that the opponent cannot sustain his burden at trial, *Minadeo*, 398 F.3d at 761, a moving party *with* the burden of proof faces a "substantially higher hurdle." *Cockrel v. Shelby Cty. Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). "Where the moving party has the burden—the plaintiff on a claim for relief or the defendant on an affirmative defense—his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (quoting W. Schwarzer, Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact, 99 F.R.D. 465, 487–88 (1984)). Accordingly, summary judgment in favor of the party with the burden of persuasion is not appropriate "when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

## IV.    Analysis

Congress amended the Copyright Act in 1976 to create a "termination right," that is, it authorized the author of a work "to undo a prior transfer of his copyright and recapture all interests in the copyright for himself." *Brumley v. Albert E. Brumley & Sons, Inc.*, 822 F.3d 926, 928 (6th Cir. 2016). For works transferred on or after January 1, 1978, the author (or his successors, as defined by the statute) could terminate the transfer between thirty-five and forty years after the date the copyright was assigned to a third party. *See* 17 U.S.C. § 203(a)(3). If the work was copyrighted and transferred before 1978, however, the author (or his successors as provided by the Act) could terminate between fifty-six and sixty-one years after the work was copyrighted, or for a period of five years after January 1, 1978, whichever was later. *Id.* § 304(c)(3). *See Brumley*, 822 F.3d at 928.[4]

---

[4] The Copyright Act was amended in 1998 to increase the length of the copyright term and to provide an additional term during which the author may terminate: between seventy-five and

These revisions were "expressly intended" to "protect authors against unremunerative transfers." H.R. Rep. No. 94-1476, at 124 (1976), *reprinted in* 1976 U.S.C.C.A.N. 5659, 5740; *see Mills Music, Inc. v. Snyder*, 469 U.S. 153, 172–73 (1985) (noting that Congress's intent to "relieve authors of the consequences of ill-advised and unremunerative grants that had been made before the author had a fair opportunity to appreciate the true value of his work product . . . is plainly defined in the legislative history and, indeed, is fairly inferable from the text of § 304 itself"). Both § 203 and § 304 provide that termination of a prior grant "may be effected notwithstanding any agreement to the contrary, including an agreement to make a will or to make any future grant." 17 U.S.C. § 203(a)(5); *id.* § 304(c)(5). Based on this language, the termination right created by §§ 203 and 304 has been repeatedly characterized as "inalienable." *See, e.g.*, *N.Y. Times Co. v. Tasini*, 533 U.S. 483, 497 (2001); *Stewart v. Abend*, 495 U.S. 207, 230 (1990); Peter S. Menell & David Nimmer, *Pooh-Poohing Copyright Law's "Inalienable" Termination Rights*, 57 J. Copyright Soc'y U.S.A. 799, 807 (2010), *cited in Brumley*, 822 F.3d at 933.

This case involves a dispute over who has the right to exercise termination rights under the Copyright Act. Underlying that issue, however, is the question of authorship of the copyrighted works. Plaintiff Don Everly seeks a judicial declaration that Phil Everly is not a co-author of the Subject Compositions and that the defendants' Counterclaim asserting Phil Everly's co-authorship as the basis for their Notices of Termination is time-barred by the United States Copyright Act's three-year statute of limitations, 17 U.S.C. § 507(b). The plaintiff argues that, if Phil Everly is not a co-author of the Subject Compositions, he never possessed termination rights under the Copyright Act, and the defendants have no standing as the statutory heirs of an "author" to exercise

---

eighty years after the copyright was obtained. 17 U.S.C. § 304(d)(2). *See Brumley*, 822 F.3d at 928–29.

rights granted exclusively to authors and their heirs under 17 U.S.C. §§ 203 and 304.

More specifically, Don Everly seeks summary judgment in his favor on Counts I and III of the Complaint, and against the defendants on their Counterclaim, based on the statute of limitations defense raised in Don Everly's Answer to the Counterclaim. Alternatively, if the court finds that the defendants' claims are not barred by the statute of limitations, the plaintiff asks the court to find that the 1980 Release is not a "grant of a transfer or license of copyright or of any right under copyright" governed by 17 U.S.C. § 203 and, consequently, is not subject to termination under the Copyright Act as a matter of law.

The defendants argue in response that: (1) the 1980 Release "relates only to the issues of money and public credit – not ownership of the copyright . . . or authorship of the songs" (Doc. No. 22, at 2); (2) the statute of limitations did not begin to run until shortly before Don Everly initiated this action; (3) even if the statute of limitations is applicable, the plaintiff has not established that the "plain and express repudiation" standard has been met (*id.*); and (4) the interpretation of the 1980 Release and the applicability of §§ 203 and 304 present genuine issues of material fact. The defendants ask that summary judgment be denied.

### A.     The Statute of Limitations

The Copyright Act's three-year statute of limitations applies to any civil action "maintained under the provisions of this title." 17 U.S.C. § 507(b). "All of the federal circuit courts of appeal that have addressed the issue . . . agree that a determination of copyright ownership based on a disputed allegation of co-authorship presents a federal question that arises under, and must be determined according to, the Copyright Act." *Severe Records, LLC v. Rich*, 658 F.3d 571, 582 (6th Cir. 2011) (quoting *Cambridge Literary Props., Ltd. v. W. Goebel Porzellanfabrik G.m.b.H. & Co. KG.*, 510 F.3d 77, 86 (1st Cir. 2007). The Sixth Circuit, like most of the other federal appellate

courts, has held that a "claim for copyright ownership 'is barred three years from "plain and express repudiation" of authorship.'" *Roger Miller Music, Inc. v. Sony/ATV Publ'g, LLC*, 477 F.3d 383, 390 (6th Cir. 2007) (quoting *Ritchie v. Williams*, 395 F.3d 283, 288 n.5 (6th Cir. 2005)). A copyright ownership claim "accrues only once, and if an action is not brought within three years of accrual, it is forever barred." *Id.* (quoting *Zuill v. Shanahan*, 80 F.3d 1366, 1369 (9th Cir. 1996)).

Even where a plaintiff brings claims that are not, on their face, copyright claims or barred by the applicable statute of limitations, courts have held that, where the claims presuppose copyright ownership or other copyright interests and those interests are disputed, the claims are barred if not brought within the three-year statute of limitations. *See, e.g.*, *Tomas v. Gillespie*, 385 F. Supp. 2d 240, 246 (S.D.N.Y. 2005) (where the plaintiff sought to exercise a termination interest under 17 U.S.C. §§ 203 and 304 as a natural child of Dizzie Gillespie, holding that "[t]he primary remedy [the plaintiff] seeks is a declaration that she is Gillespie's natural child and a co-owner of the renewal copyrights," and that such claims had accrued, at the latest, when the plaintiff was put on notice that her claim of paternity had been repudiated); *Weber v. Geffen Records, Inc.*, 63 F. Supp. 2d 458, 464 (S.D.N.Y 1999) ("No cause of action, whether or not brought under the Copyright Act, may be premised on a time-barred challenge to copyright."); *Margo v. Weiss*, No. 96 Civ. 3842 (MBM), 1998 WL 2558, at *9 (S.D.N.Y. Jan. 5, 1998) (rejecting non-copyright claims for breach of fiduciary duty and duty to account, because they were based on the assumption that the parties had been co-authors, and the claim for co-authorship was time-barred).

In *Ritchie*, a promoter and a number of related entities brought suit in state court against singer-songwriter Kid Rock, asserting breach-of-contract claims under state law. Kid Rock removed the case to federal court on the grounds of preemption, and the case was consolidated with a trademark case Kid Rock had already filed in federal court against the plaintiffs in the

removed case. The Sixth Circuit held that the contract claims—which amounted to copyright infringement claims—were completely preempted by the Copyright Act and, therefore, that the district court had not erred in permitting removal of the claims to federal court and exercising jurisdiction over them. The court also held that the claims accrued in 1990, when Kid Rock wrote a letter, forwarded to the defendants, "flatly stating that he did not intend to work with the parties to the 1989 contracts with respect to the publishing, production or performance of his songs" and "made it clear that he regarded the songs he had written as his songs. Thereafter, he openly claimed exclusive ownership of the 'Top Dog' label and the rights to his songs." *Ritchie*, 395 F.3d at 288. The court held that, because the defendants had waited ten years to file suit on these claims, they were barred by the three-year statute of limitations. *Id.* at 288–89. *See also Zuill*, 80 F.3d at 1368 ("We conclude that claims of co-ownership . . . accrue when plain and express repudiation of co-ownership is communicated to the claimant, and are barred three years from the time of repudiation.").

### B.      The Defendants' Ownership Claim

This case is in an unusual procedural posture, and neither party has pointed to any precedent that is directly on point. Here, the original grant and copyright registrations identified both Don and Phil Everly as co-authors of the Subject Compositions. In all of the above-referenced cases, the *plaintiff's* copyright-related claims were barred by the statute of limitations. In this case, the plaintiff seeks a declaration that any claims based on Phil Everly's co-authorship of the Subject Compositions are barred by the statute of limitations and that Don Everly alone has the ability to exercise statutory termination rights. He asserts that the three-year statute of limitations bars the defendants' counterclaims as well as their defenses to his claims, as they all require a predetermination that Phil Everly was a co-author of the Subject Compositions.

The defendants insist that Don Everly's first "plain and express repudiation" of Phil Everly's co-authorship did not take place until Don sent a demand letter to Phil's estate in October 2017, shortly before the filing of the Complaint.[5] They contend that the 1980 Release, standing alone, could not have triggered the running of the limitations period, because it does not qualify as a plain and express repudiation of authorship. They argue that the 1980 Release does not expressly state that Phil did not write the Subject Compositions or "renounce[] Phil Everly's authorship contribution to the [Subject Compositions]." (Doc. No. 22, at 6.) They argue that, even as late as 1984, Don Everly publicly acknowledged that "Cathy's Clown" was jointly authored by both brothers.[6]

For his part, the plaintiff contends that he unequivocally claimed sole authorship of the Subject Compositions beginning no later than June 1980. He points to Jason Everly's and Patti Everly's acknowledgments that Phil Everly communicated with Don Everly in 1980, demanding that Phil Everly give up any claim to co-authorship of the Subject Compositions. They effectively concede that Phil signed the 1980 Release as a direct result of that demand.

The plaintiff also argues that, irrespective of whether the 1980 Release itself constitutes a plain and express repudiation of authorship, the accumulation of events that followed the execution

---

[5] The defendants do not argue that the plaintiff's claims are barred by the statute of limitations.

[6] During Don Everly's deposition, the defendants played a video recording from 1972 and an audio recording from 1984 in which Don was apparently interviewed regarding the genesis and creation of "Cathy's Clown." These recordings were made exhibits to Don Everly's deposition, but the defendants did not introduce them into evidence in support of their opposition to the plaintiff's Motion for Summary Judgment. At his deposition, Don was asked why he stated during both of those interviews that Phil Everly co-wrote "Cathy's Clown." (Doc. No. 19-5, Don Everly Dep. 16–17.) Don responded that Acuff-Rose wanted him to put Phil's name on the works because "you know, it's better for the career," so he did. (*Id.* at 17.) He reaffirmed during his deposition, however, that Phil did not co-write Cathy's Clown. (*Id.*)

of that Release amounts to a plain and express repudiation. For example, he points out, after receiving notice of the Release, Acuff-Rose and BMI changed their records to reflect that Don was the sole author of the Subject Compositions. Licenses for "Cathy's Clown" issued after June 1980 identified Don as the sole author. Reba McIntyre's cover of the song credited Don as the sole author, and Don received a BMI award as sole author of the song. Phil was aware of all of these events, but he never reneged on the agreement as embodied in the 1980 Release, and he never publicly refuted Don's claim of sole authorship during his lifetime. Further, in January 1988, Acuff-Rose, as the "duly authorized agent of Don Everly," renewed the copyright to "Cathy's Clown." (Doc. No. 1-5.) Don Everly is the sole renewal claimant listed on the renewal form, and Don Everly alone is identified as the "author" of the words and music to "Cathy's Clown" in the Renewal Registration. (*Id.*) In 2011, Don Everly exercised his termination rights with respect to all three Subject Compositions by filing a Notice of Termination of the 1960 Grants to recapture 100% of the United States copyright in the Subject Compositions, effective April 14, 2016. Don Everly's Notice of Termination was recorded in the U.S. Copyright Office effective July 15, 2011. (Doc. No. 1-6, at 4–5.) The plaintiff argues that all of these events together establish a plain and express repudiation of Phil's co-authorship of the Subject Compositions that took place more than three years prior to the filing of the defendants' counterclaim.

The court finds, based on the totality of the evidence referenced above, that Don Everly plainly and expressly repudiated Phil Everly's claim to joint authorship of the Subject Compositions no later than 2011, when Don filed his Notice of Termination. *Accord Cambridge Literary Props.*, 510 F.3d at 91 (viewing the totality of the circumstances to conclude that the statute of limitations began running no later than 1995, including the existence of "[p]ublicly available documents in the Copyright Office," prior litigation that cast doubt on a claimant's rights,

and the defendant's having long "engaged in widespread exploitation of at least some portion of those rights . . . without remuneration to [the claimant]"). The 2011 Don Everly Notice of Termination filed in the Copyright Office was a public record. *See Ray Charles Found. v. Robinson*, 795 F.3d 1109, 1117 (9th Cir. 2015) (noting that the Copyright Office has expressly stated that it "serves as an office of public record" (quoting Compendium of Copyright Office Practices III § 2305 (2014))). And only a sole author would have the ability to terminate a grant and recapture 100% of the United States copyright in the Subject Compositions, as Don purported to do in his Notice of Termination. 17 U.S.C. § 304(c)(1). In addition, the defendants are presumed to know the law and their rights thereunder. *See, e.g.*, *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1548 (9th Cir. 1989) ("[A]s a matter of law, [the defendant] knew or should have known of the change in the copyright law which established their cause of action for reformation [of a contract] as of . . . the effective date of the Copyright Act of 1976."). Don Everly's 2011 Notice of Termination, in conjunction with all the events that had taken place before it, constituted a plain and express repudiation of Phil Everly's authorship of the Subject Compositions. Consequently, the defendants' Counterclaim for a declaration that Phil Everly is an author of the Subject Compositions is barred by the three-year statute of limitations.

Because the authorship claim is barred, the defendants' request for a declaration as to the validity of their Notices of Termination under 17 U.S.C. §§ 304(c) and 203(a) is also barred, as are their defenses to the plaintiff's claim to sole authorship, and the plaintiff is entitled to judgment in his favor on Counts I and III of the Complaint.

The conclusion that the defendants have no statutory termination rights effectively moots Count II of the plaintiff's Complaint, which seeks a declaration that the 1980 Release is not a grant subject to termination pursuant to 17 U.S.C. § 203(a). Because the defendants' termination rights

are dependent upon their underlying claim that Phil Everly is an author of the Subject Compositions, which is time-barred, their attempt to terminate the 1980 Release is ineffective, regardless of whether it is subject to termination in the first place. The court, therefore, will not address the merits of that claim.

**V.      Conclusion**

For the reasons set forth herein, the defendant's Motion for Summary Judgment will be granted, and this case will be dismissed. An appropriate Order is filed herewith.

ENTER this 6th day of November 2018.

_____
ALETA A. TRAUGER
United States District Judge