# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | | |
|---|---|---|
| ISAAC DONALD EVERLY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **Case No. 3:17-cv-01440** |
| | ) | **Judge Aleta A. Trauger** |
| PATRICE Y. EVERLY, PHILLIP J. | ) | |
| EVERLY, CHRISTOPHER EVERLY, | ) | |
| THE PHILLIP EVERLY FAMILY | ) | |
| TRUST and EVERLY AND SONS | ) | |
| MUSIC (BMI), | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM

Before the court are the defendants' Motion for Judgment as a Matter of Law and Memorandum of Law in Support (Doc. No. 69), and the plaintiff's Motion for Partial Summary Judgment, filed with a separate Memorandum (Doc. Nos. 70, 71). For the reasons stated herein, the plaintiff's motion will be granted, and the defendants' motion will be denied.

## I. FACTUAL BACKGROUND[1]

Isaac Donald Everly ("Don" or "Don Everly"), the plaintiff in this action, and Phillip Everly ("Phil" or "Phil Everly"), who died in 2014, are brothers and were members of the music group, the Everly Brothers. (Doc. No. 19-1 ¶ 2.) The Everly Brothers dissolved and Don and Phil Everly stopped speaking in 1973. (*Id.* ¶ 11.)

Phil Everly is survived by his third wife, Patrice Everly ("Patti Everly"), and two sons, Phillip J. Everly ("Jason Everly") and Christopher Isaac Everly ("Chris Everly"). Patti, Jason, and

---

[1] The facts set forth herein are undisputed, except as otherwise noted.

Chris Everly are the defendants in this action.

One of the Everly Brothers' most famous hits was the song "Cathy's Clown," which was recorded and released in 1960. (Doc. No. 19-1 ¶ 4; Doc. No. 1-2; Doc. No. 19-9.) Don and Phil Everly are both listed as "authors" on the original copyright registrations for "Cathy's Clown." By agreement dated March 21, 1960 (the "1960 Grant"), Don and Phil Everly assigned 100% of the worldwide copyright in "Cathy's Clown" to Acuff-Rose Publications ("Acuff-Rose"). (Doc. No. 1-1.) Even after assigning the copyright in "Cathy's Clown" to Acuff-Rose, Don and Phil retained the contractual right to the so-called songwriter's share of royalties derived from the song. (*Id.*; Doc. No. 23 ¶ 4.)

From 1960 to 1980, "Cathy's Clown" was credited on all copies as having been authored by both Don and Phil, and they shared the composition's songwriter royalties equally. They also publicly described the process of writing the song as a joint effort. For instance, in 1972, Don and Phil were interviewed on The David Frost Show, during which Don stated that the brothers wrote "Cathy's Clown" together, and Phil described how they worked together on the song. (Doc. No. 37.)

The crux of this dispute arises from the fact that Don Everly now claims sole authorship of "Cathy's Clown" (*see* Doc. No. 19-1 ¶¶ 3, 6; Doc. No. 19-5, Don Everly Dep. 11, 22[2]) and seeks a judicial declaration to that effect. Although that contention is in dispute, and the events leading up to Phil's execution of a document entitled "Release and Assignment" (the "1980 Release") are contested, there is no dispute that, on June 10,1980, Phil signed this 1980 Release, which, first,

---

[2] The deposition transcripts filed by the parties are condensed versions, containing four pages of the original transcript on each page. Some of the transcripts are excerpts rather than complete copies. The page numbers provided herein are those assigned to the original deposition transcript.

acknowledges that Don and Phil entered into the 1960 Grant "transferring" "Cathy's Clown" to Acuff-Rose as publisher and that the 1960 Grant "listed both Phil Everly and Don Everly as composers" of "Cathy's Clown." (Doc. No. 1-3.) In pertinent part, the 1980 Release then states that Phil "desires to release, and transfer, to [Don] all of his rights, interests and claim in and to ["Cathy's Clown"], including rights to royalties and his claim as co-composer, effective June 1, 1980." (*Id.*) In exchange for the recited consideration of $1.00, Phil did "transfer, release, assign and set over unto Don . . . all of his rights, titles, interests and claim to" "Cathy's Clown", the copyright to which was noted still to be owned by Acuff-Rose. (*Id.*) The transfer "include[d] not only [Phil's] right to royalties and other income arising out of ["Cathy's Clown"] from and after the effective date, but also every claim of every nature by him as to the composition[] of said song[]." (*Id.*) Finally, the 1980 Release directed Acuff-Rose and the performing rights society, Broadcast Music, Inc. ("BMI"), to "correct their records accordingly and to make payments of amounts due and to become due to the said Don Everly solely on and after the effective date" of the agreement. (*Id.*)

The 1980 Release was recorded in the United States Copyright Office and filed with BMI and Acuff-Rose shortly thereafter. (Doc. No. 19-9, at 2; (Doc. No. 19-1 ¶¶ 17, 18.) BMI and Acuff-Rose Publications modified their records to reflect that Don Everly was the sole "author" of "Cathy's Clown" (Doc. No. 19-11, at 2, 5), and they ceased payment of any songwriter royalties to Phil Everly (Doc. No. 19-5, Don Everly Dep. 22; Doc. No. 19-1 ¶18).

After execution of the 1980 Release and in accordance with its terms, Don Everly was publicly credited as the sole author of "Cathy's Clown" and was paid 100% of the songwriter's share of royalties for "Cathy's Clown." (Doc. No. 19-1 ¶¶ 20 and 24; Doc. No. 19-3, Jason Everly Dep. 45, 99.) After the filing of the 1980 Release, Sony issued hundreds of licenses designating

Don Everly as the sole author of "Cathy's Clown." (Doc. No. 19-9, at 26–38.) In 1990, Reba McEntire's cover recording of "Cathy's Clown" earned the Robert J. Burton Award for BMI Country Song of the Year, an award that was presented to Don Everly as the sole songwriter at an awards celebration that Don attended without Phil Everly. (Doc. No. 19-5, Don Everly Dep. 27–28; Doc. No. 19-1 ¶ 20.) Phil Everly was aware that Don Everly alone had been accorded this award. (Doc. No. 19-3, Jason Everly Dep. 19.) Prior to 1980, both Don and Phil Everly had been awarded songwriting honors for "Cathy's Clown" by BMI. (*See* Doc. No. 19-11, at 8–9 (program for 1961 BMI award dinner).) In addition, the 1984 biography of the Everly Brothers, *Walk Right Back*, reports Phil's description of the writing of "Cathy's Clown" as follows:

> Don called me and said he'd started writing a song and could I come over. He'd written the chorus of Cathy's Clown and had the melody for the verses. I just put together the verses and it was finished. We went into the studio and cut in maybe two days and we knew it was a hit.

(Doc. No. 19-5, at 11–12, Don Everly Dep. Ex. 2.) In a 1984 television interview, the brothers seemed to corroborate that version of events. (Doc. No. 37.) In a booklet for the Everly Brothers' 1994 box set *Heartaches and Harmonies*, Phil is reported to have similarly stated: "Donald had the chorus for ["Cathy's Clown"]. I went over to his house, because we lived across the street [from each other] at that time, and wrote the verses—although my name's not on it any longer."

(Doc. No. 41-1, at 11.) The defendants also allege that Phil continued to privately maintain that he was a co-author of the song. (*See, e.g.*, Doc. No. 19-3, Jason Everly Dep. 67; Doc. No. 19-4, J. Paige Dep. 14.) Nonetheless, from June 10, 1980, when the 1980 Release was executed, until his death in 2014, Phil Everly never brought a legal action to challenge Don Everly's claim of sole authorship of "Cathy's Clown" or the enforceability of the 1980 Release. (Doc. No. 19-2, Patti Everly Dep. 30.)

In January 1988, Acuff-Rose, as the "duly authorized agent of Don Everly," renewed the copyright to "Cathy's Clown." (Doc. No. 1-5.) Don Everly is the sole renewal claimant and the sole "author" of the words and music to "Cathy's Clown" identified on the Certificate of Renewal Registration. (*Id.* at 2.)

In 2011, Don Everly engaged counsel to exercise his United States copyright termination rights with respect to "Cathy's Clown" by filing a notice to terminate the 1960 Grant pursuant to 17 U.S.C. § 304(c)[3] and recapture 100% of the United States copyright in "Cathy's Clown," effective April 14, 2016 and recorded in the U.S. Copyright Office effective July 15, 2011 (the "2011 Don Everly Notice of Termination"). (Doc. No. 1-6, at 4–5; Doc. No. 19-12 ¶ 12; Doc. No. 19-1 ¶ 21.) As a result of the exercise of his termination rights, Don Everly claims exclusive copyright ownership in "Cathy's Clown."

Also in 2011, Don authorized his attorney to file paperwork in the U.S. Copyright Office to remove Phil's name as author of "Cathy's Clown" on the original 1960 copyright registration. (Doc. No. 19-12 ¶ 13.) In response to that directive, Don's attorney filed forms with the U.S. Copyright Office stating, "Corrected Information: Delete Phil Everly," and further explaining, "Copyright claimant/publisher, Acuff-Rose Publications, mistakenly listed Phil Everly as co-author, however, Don Everly is the sole author as confirmed by the agreement signed by Phil Everly . . . ." (Doc. No. 19-12, at 26–27, 30–31, 42–43.) The U.S. Copyright Office rejected the forms, explaining that corrections to pre-1978 copyright registrations had to be filed within 28 years of the initial registration. (*Id.* ¶ 13.)

---

[3] Section 304(c) provides that an author's "exclusive or nonexclusive grant of a transfer or license of the renewal copyright or any right under it, executed before January 1, 1978" may be terminated under certain conditions. Section 203(a) similarly provides for the termination of copyright grants, but it applies to grants executed by the author "on or after January 1, 1978."

In 2007, Phil Everly engaged Lewis Anderson to file notices of termination, that is, to exercise his termination rights, with respect to three specific songs, but not for "Cathy's Clown." (Doc. No. 19-7, L. Anderson Dep. 19, 22–23, 28.) In 2012, Phil engaged Copyright Recapture to assist him in exercising his termination rights with respect to twenty-two additional songs. "Cathy's Clown" was not among these songs and was not listed on any of the notices of termination prepared by Copyright Recapture. (Doc. No. 19-13, at 9–25.)

Following Phil's death in early 2014, Patti Everly and Jason Everly filed their own notice purporting to terminate the 1960 Grant and the extended renewal term of the copyright for "Cathy's Clown," effective November 14, 2016 (the "2014 Notice of Termination"), pursuant to 17 U.S.C. § 304(c). (Doc. No. 1-7, at 4–9.) In 2016, Patti and Jason served on Don Everly a Notice of Termination (the "2016 Notice of Termination"), purporting to terminate all rights granted by Phil to Don Everly in the 1980 Release, pursuant to 17 U.S.C. § 203(a). (Doc. No. 1-8.)

## II.    PROCEDURAL BACKGROUND

Plaintiff Don Everly filed his Complaint for Declaratory Judgment (Doc. No. 1) on November 8, 2017, against Patti Everly, Jason Everly, and Chris Everly as the statutory successors to Phil Everly's termination rights under the United States Copyright Act ("Copyright Act"), specifically 17 U.S.C. §§ 304(c) and 203(a), and against the Phillip Everly Family Trust ("Trust") and Everly and Sons Music (BMI) (alleged to be an assumed name for the Trust (Doc. No. 1 ¶ 8)), as a legal owner or successor to Phil Everly's rights or as a legal owner of the statutory successors' rights (collectively "defendants"). The Complaint contains three "Counts," each seeking a judicial declaration. Count 1 seeks a declaration that Phil Everly is not an "author" of "Cathy's Clown" and, therefore, that the defendants are not the statutory successors of an "author" with respect to "Cathy's Clown" and are estopped from exercising any rights granted to "authors" of copyrighted works, including the filing of a Notice to Terminate the 1960 Grant. Count 2 seeks a declaration

that the 1980 Release is not a grant of a transfer or license of copyright or of any right under a copyright and, therefore, is not subject to termination pursuant to 17 U.S.C. § 203(a), thus invalidating the 2016 Notice of Termination of the 1980 Release served on the plaintiff by the defendants. And Count 3 seeks a declaration that Don Everly owns 100% of the U.S. copyright in "Cathy's Clown" and 100% of the songwriter royalties derived from that work. (Doc. No. 1, at 12–13.)

The defendants filed an Answer, Affirmative Defenses, and Counterclaim (Doc. No. 5) on November 29, 2017. Their Counterclaim seeks declarations that Phil Everly is an author of "Cathy's Clown" "pursuant to 17 U.S.C. § 203"; that the defendants' Notices of Termination were valid under 17 U.S.C. §§ 304(c) and 203(a); and that the defendants are entitled to half of the income derived from the exploitation of "Cathy's Clown." (Doc. No. 5, at 7.)

The court issued an order granting summary judgment to plaintiff Don Everly on November 6, 2018. (Doc. No. 27.) In the accompanying Memorandum, the court found that Don's 2011 Notice of Termination, considered in conjunction with all of the events that had taken place before it, constituted a plain and express repudiation of Phil's authorship of "Cathy's Clown" and, therefore, that the defendants' Counterclaim for a declaration that Phil is an author of that song was barred by the three-year statute of limitations in 17 U.S.C. § 507(b), applicable to authorship claims. (*See* Doc. No. 26, at 17.) The court also found that the defendants' identical defense to the plaintiff's sole claim of authorship was time-barred and that the plaintiff was entitled to judgment in his favor on Counts I and III of the Complaint.

Notably, for purposes of the present motions, the court did not reach the plaintiff's alternative basis for relief set forth in Count II of the Complaint. In addition, the court subsequently denied the defendants' Rule 59(e) motion and declined to consider the new arguments raised

therein, specifically the defendants' claim that the statute of limitations cannot be used to bar an affirmative or factual defense—as opposed to an affirmative claim for relief—and that the court erred as a matter of law in concluding that the defendants' rights to claim co-ownership of the copyright were waived before their termination rights even accrued. (Doc. No. 43.)

The Sixth Circuit reversed and remanded, finding that a material factual dispute existed as to whether Don had expressly repudiated Phil's authorship of "Cathy's Clown." *Everly v. Everly*, 958 F.3d 442 (6th Cir. 2020).[4] This court has construed the scope of the remand as general rather than limited, as a result of which "all claims at issue in the Complaint and Counterclaim remain pending, effectively without limitation." (Doc. No. 65, at 4.)[5] As the court explained in addressing a motion by the defendants to clarify the scope of the remand, besides sending Counts I and III back to the starting line, the general remand also means that the plaintiff's Count II, which the court dismissed as moot, is reinstated and that the defendants are not barred from asserting the arguments initially raised in their Rule 59(e) motion.

Recognizing that the resolution of certain questions of law that have never been considered on the merits might narrow and simplify the trial of this matter, now scheduled to begin November 3, 2020, the court granted the parties' request that they be allowed to file the motions that are now before the court. The defendants' Motion for Judgment as a Matter of Law asks the court to rule as a matter of law that (1) the statute of limitations cannot operate to bar the defendants' defenses

---

[4] The Sixth Circuit, like this court, declined to reach the issues the defendants had not raised until their Rule 59 motion.

[5] The exception to the general remand is that this court also awarded summary judgment to the plaintiff as to the authorship of two other compositions. Because the defendants did not appeal that portion of this court's judgment, the Sixth Circuit affirmed that portion of the original judgment, which therefore remains in effect. *See Everly v. Everly*, 958 F.3d 442, 448 n.6 (6th Cir. 2020) (finding that the defendants had "forfeited any argument" regarding these two compositions and affirming summary judgment for the plaintiff on the claims related to them).

to the plaintiff's affirmative claims, even if it might, arguably, bar the defendants' Counterclaims; and (2) the proper accrual date for a copyright termination claim is the effective date of termination. (Doc. No. 69.) With regard to the latter claim, the defendants argue that, as "newfound claimants" to the copyright rights accruing after termination, they should be permitted to "proceed without prejudice to what may have occurred during the original term." (Doc. No. 69, at 2.) The plaintiff has filed a Response in Opposition (Doc. No. 75), and the defendants filed a Reply (Doc. No. 76).

The plaintiff, for his part, filed the Motion for Partial Summary Judgment asking the court to rule on Count II of the Complaint and issue a judicial declaration that the 1980 Release is not subject to termination under 17 U.S.C. § 203(a), because it is not a "grant of a transfer or license of copyright or of any right under a copyright." (*See* Doc. No. 70.) His supporting memorandum (Doc. No. 71) incorporates by reference the arguments made in the original Memorandum in Support of Summary Judgment (Doc. No. 21) as well as the Statement of Undisputed Material Facts and Response filed by the defendants (Doc. No. 23) in conjunction with their response to the first Motion for Summary Judgment. The defendants filed a Response (Doc. No. 72), a Statement of Additional Disputed Material Facts (Doc. No. 73), and a Supplemental Response to Plaintiff's Statement of Undisputed Material Facts in Support of His Motion for Partial Summary Judgment (Doc. No. 74), supplementing the defendants' original responses to two of the statements in the original Statement of Undisputed Material Facts (Doc. No. 23). The plaintiff filed a Reply (Doc. No. 77), a Response to Defendants' Statement of Additional Disputed Material Facts (Doc. No. 78), and Response to Defendants' Supplemental Response to [Plaintiff's] Statement of Undisputed Material Facts (Doc. No. 79).

## III.  LEGAL STANDARD

The court deems a pretrial motion for judgment as a matter of law as effectively equivalent

to a motion for summary judgment under Rule 56, except that such a motion presumes the absence of material factual disputes and seeks resolution of purely legal issues. Under Rule 56(c), "summary judgment is appropriate when: (1) there is no genuine issue as to any material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, who is entitled to have the evidence construed most strongly in his favor." *Mengelkamp v. Lake Metro. Hous. Auth.*, 549 F. App'x 323, 329 (6th Cir. 2013). Summary judgment will be entered against a party who fails "to establish the existence of an element essential to that party's case and on which that party bears the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

While a moving party *without* the burden of proof need only show that the opponent cannot sustain his burden at trial, *Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005), a moving party *with* the burden of proof faces a "substantially higher hurdle." *Cockrel v. Shelby Cty. Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). "Where the moving party has the burden—the plaintiff on a claim for relief or the defendant on an affirmative defense—his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (quoting W. Schwarzer, Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact, 99 F.R.D. 465, 487–88 (1984)). Accordingly, summary judgment in favor of the party with the burden of persuasion is not appropriate "when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

## IV.    ANALYSIS

### A.    The Plaintiff's Motion for Partial Summary Judgment: Whether the 1980 Release May Be Terminated Under 17 U.SC. § 203(a)

Congress amended the Copyright Act in 1976 to create a "termination right"; that is, it authorized the author of a work (or his successors) "to undo a prior transfer of his copyright and recapture all interests in the copyright for himself." *Brumley v. Albert E. Brumley & Sons, Inc.*, 822 F.3d 926, 928 (6th Cir. 2016). For works transferred on or after January 1, 1978, the author (or his successors, as defined by the statute) could terminate the transfer between thirty-five and forty years after the date the copyright was assigned to a third party. 17 U.S.C. § 203(a)(3). If the work was copyrighted and transferred before 1978, however, the author (or his successors as provided by the Act) could terminate between fifty-six and sixty-one years after the work was copyrighted, or for a period of five years after January 1, 1978, whichever was later. *Id.* § 304(c)(3). *See Brumley*, 822 F.3d at 928.[6]

These revisions were "expressly intended" to "protect authors against unremunerative transfers." H.R. Rep. No. 94-1476, at 124 (1976), *reprinted in* 1976 U.S.C.C.A.N. 5659, 5740; *see Mills Music, Inc. v. Snyder*, 469 U.S. 153, 172–73 (1985) (noting that Congress's intent to "relieve authors of the consequences of ill-advised and unremunerative grants that had been made before the author had a fair opportunity to appreciate the true value of his work product . . . is plainly defined in the legislative history and, indeed, is fairly inferable from the text of § 304 itself"). Both § 203 and § 304 provide that termination of a prior grant "may be effected notwithstanding any agreement to the contrary, including an agreement to make a will or to make any future grant." 17

---

[6] The Copyright Act was amended in 1998 to increase the length of the copyright term and to provide an additional term during which the author may terminate: between seventy-five and eighty years after the copyright was obtained. 17 U.S.C. § 304(d)(2). *See Brumley*, 822 F.3d at 928–29.

U.S.C. § 203(a)(5); *id.* § 304(c)(5). Based on this language, the termination rights created by §§ 203 and 304 have repeatedly been characterized as "inalienable." *See, e.g.*, *N.Y. Times Co. v. Tasini*, 533 U.S. 483, 497 (2001); *Stewart v. Abend*, 495 U.S. 207, 230 (1990).

As relevant here, Section 203(a) authorizes, under certain conditions, the termination of "the exclusive or nonexclusive grant of a transfer or license of copyright or of any right under a copyright, executed by the author on or after January 1, 1978, otherwise than by will." The ability of the defendants to "terminate" the 1980 Release under this provision, according to its terms, depends on the resolution of two questions. (1) Is Phil Everly an "author" of "Cathy's Clown"? (2) Does the 1980 Release qualify as a "grant of a transfer or license of copyright or of any right under a copyright"?

Irrespective of the answer to the first question, Count 2 of the Complaint seeks a determination that the 1980 Release is not subject to termination under § 203(a) solely because it is not a "grant of a transfer or license of copyright or of any right under a copyright" and, therefore, that the defendants' 2016 Notice of Termination, purporting to terminate the 1980 Release, is invalid. (Doc. No. 1 ¶ 44.) Don Everly also moves for summary judgment on this issue on the basis that the defendants have "already conceded" that Acuff-Rose "owned 100% of the worldwide copyright and all rights under copyright" in "Cathy's Clown" in 1980 when Phil Everly executed the Release. (*Id.*) As a result, the plaintiff claims, Phil had no copyright rights to convey at that time. Instead, Don argues, Phil conveyed only contractual rights to royalties, which are not among the rights under copyright recognized by the Copyright Act, 17 U.S.C. § 106. The plaintiff points out that the defendants, in previous filings, have repeatedly acknowledged that the 1980 Release relates "only to issues of money and public credit—not ownership of the copyright (which had been conveyed to Acuff-Rose as publisher)." (Doc. No. 71, at 5 (quoting Doc. No. 22, at 2, 4, 6).)

In response, the defendants contend that it is the plaintiff who has changed his posture as to this issue, having previously insisted that, by executing the 1980 Release, Phil "surrendered . . . his status as an 'author' of ['Cathy's Clown'] along with the copyright protections available to authors," which "nullified Phil's ability to invoke the termination rights granted to 'authors' under 17 U.S.C. § 203(a)." (Doc. No. 72, at 1 (quoting Doc. No. 41-1, at 19 (10/6/17 letter from pl.'s counsel to defs.' counsel)).) The defendants also posit that neither Phil nor Don transferred "all rights under the copyright" in "Cathy's Clown" to Acuff-Rose, because, as authors, they retained their statutory termination rights, which are "right[s] under copyright." (*Id.* at 5 (citing 17 U.S.C. § 203(a)).)[7]

Otherwise, however, the defendants agree that, because authorship status and termination rights are non-transferable, the 1980 Release conveyed only Phil's then existing right to receive royalties, "as distinguished from any royalty rights Defendants may acquire upon successful termination of the original grant in the 1960 [Grant] or otherwise." (Doc. No. 72, at 5.) They argue, however, that because *Don* has insisted on characterizing the 1980 Release as a "surrender" of Phil's authorship status and concomitant termination rights, "it was proper for Defendants to serve a termination notice with respect to the 1980 Release and Assignment to protect their rights." (*Id.* at 5–6.)

In his Reply, the plaintiff reiterates his claim that he is entitled to judgment in his favor on this issue, because it is effectively undisputed, as the defendants' Response makes clear, that "the only rights that Phil could have transferred to Don in the 1980 Release and Assignment were his then-existing right[s] to receive royalties." (Doc. No. 77, at 1 (quoting Doc. No. 72, at 5).) The

---

[7] Alternatively, they contend that, to the extent the 1980 Release purported to convey termination rights, it is unenforceable under 17 U.S.C. § 203(a)(5). (Doc. No. 72, at 5 n.3.)

plaintiff also agrees that authorship status and termination rights are inalienable under the Copyright Act. (*Id.* at 3.)

The law is clear, as both parties concede, that termination rights are non-transferable, "notwithstanding any agreement to the contrary." *See* 17 U.S.C. § 203(a)(5); *Tasini*, 533 U.S. at 497. The law is also clear that assignments conveying the right to receive royalties do not "transfer any interest in a copyright or in any of the exclusive rights comprised in a copyright." *Broad. Music, Inc. v. Hirsch*, 104 F.3d 1163, 1166 (9th Cir. 1997); *accord Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 457 (6th Cir. 2001) (observing that the "remedies available under copyright law do not include damages for the reasonable value of the defendants' use of the work" and holding that "a state law breach of contract claim based upon a promise to pay for the use of the work is not preempted" by the Copyright Act (citing 1 *Nimmer on Copyright* § 1.01[B][1][a])); *Rodrigue v. Rodrigue*, 218 F.3d 432, 439–40 (5th Cir. 2000) ("Notably absent from the Copyright Act's exclusive sub-bundle of five rights is the right to enjoy the earnings and profits of the copyright."); *Big E. Entm't, Inc. v. Zomba Enters., Inc*, 453 F. Supp. 2d 788, 798 (S.D.N.Y. 2006) ("[A]n agreement concerning royalties does not constitute a 'transfer of copyright ownership' within the meaning of [the Copyright Act]." (citation omitted)), *aff'd*, 259 F. App'x 413 (2d Cir. 2008).

Moreover, as the discussion above reflects, the effect of the 1980 Release is apparently undisputed: the Release conveyed, and could only convey, the royalty and credit rights that Phil possessed at the time he executed the Release. Because these are not copyright rights under 17 U.S.C. § 106, the plaintiff is entitled to judgment in his favor on Count 2 in the form of a "determination" that the 1980 Release is not a "grant of a transfer . . . of any right under a copyright" and, therefore, does not fall within the scope of, and is not subject to termination pursuant to, § 203(a). As a result, the 2016 Notice of Termination, purporting to terminate the 1980

Release, is invalid. It is entirely unclear, however, what effect—if any—this determination will have on the remainder of the plaintiff's (or defendants') claims.

### B. The Defendants' Motion: Can the Plaintiff Can Deploy the Statute of Limitations to Bar a Defense?

#### 1. *The Parties' Positions*

In their Motion for Judgment as a Matter of Law, the defendants assert, first, that it is a well established general rule that the statute of limitations "cannot be used to cut off the consideration of a defense" and that this general rule applies in the copyright context. (Doc. No. 69, at 7.) They also argue that they "asserted Phil's co-authorship of *Cathy's Clown* as a defense to Don's Complaint seeking a declaration of sole authorship." (*Id.* at 8.) They contend that the statute of limitations cannot be used to bar this factual defense, regardless of whether the statute of limitations might be used to bar their affirmative counterclaims. Anticipating that Don will respond that the statute of limitations may bar their defense because they are actually in an "offensive" position, they maintain that only from Don's perspective could they be deemed the "aggressors" and that, regardless, they are on the defensive side with respect to his affirmative claims. (*Id.*) They also propose that their Counterclaim "should be construed as a defense to avoid injustice." (*Id.* at 10 (citing Fed. R. Civ. P. 8(c)(2)).)

In response, the plaintiff indeed argues that the defendants are not merely in a "defensive" posture. Substantively, however, he focuses entirely on the demands for relief in the Counterclaim itself, arguing that the defendants' claims that depend on authorship are barred by the statute of limitations, regardless of whether they are characterized as "defensive counterclaims." (Doc. No. 75, at 6; *see id.* at 8 ("Defendants never explain why Don should be penalized for actively pursuing his rights to *Cathy's Clown* while they should be allowed to avoid the consequences of Phil's decades-long inaction by pretending that their counterclaim is anything other than what it is.").)

He insists that the defendants' reliance on the cases they cite, in particular *Estate of Hogarth v. Edgar Rice Burroughs, Inc.*, 342 F.3d 149 (2d Cir. 2003), is misplaced and that *Ritchie v. Williams*, 395 F.3d 283 (6th Cir. 2005), "on the other hand, is both on point and controlling." (Doc. No. 75, at 9.)

In their Reply, the defendants insist that the plaintiff sidesteps the actual argument put forth in their motion: "whether a defendant can be time-barred from asserting a factual defense irrespective of whether the statute of limitations may bar a claim for affirmative relief"—*i.e.*, including one set forth in a counterclaim—"based upon the same underlying facts." (Doc. No. 76, at 1.)

## 2. *Discussion*

The Copyright Act's three-year statute of limitations applies to any civil action "maintained under the provisions of this title." 17 U.S.C. § 507(b). A copyright infringement claim accrues, and the limitations period begins to run, with each "new infringing act." *Roger Miller Music, Inc. v. Sony/ATV Publ'g, LLC*, 477 F.3d 383, 390 (6th Cir. 2007) (quoting *Ritchie*, 395 F.3d at 288 n.5). A copyright ownership claim, on the other hand, "accrues only once, and if an action is not brought within three years of accrual, it is forever barred." *Id.* (quoting *Zuill v. Shanahan*, 80 F.3d 1366, 1369 (9th Cir. 1996)); *see also Everly v. Everly*, 958 F.3d 442, 450 (6th Cir. 2020). "[T]the statutory period for any action to establish ownership begins to run whenever there is a 'plain and express repudiation' of ownership by one party as against the other." *Everly*, 958 F.3d at 450 (quoting *Ritchie*, 395 F.3d at 288 n.5). In *Everly*, the Sixth Circuit acknowledged that ownership and authorship claims, while not identical, are similar, and it held that the "express repudiation" test applies to a claim for a declaration of authorship rights as well. *Id.* at 452.

It is clear, first, that the claims set forth in the defendants' Counterclaim qualify as affirmative claims for relief. Insofar as the defendants appear to be arguing that their counterclaims

should be construed and treated as mere defenses under Rule 8(c)(2), the court rejects that proposition. As discussed further below, their counterclaims seek affirmative relief and could have been filed in a stand-alone complaint and "adjudicated separately," even if the plaintiff had not filed suit first. *See Reiter v. Cooper*, 507 U.S. 258, 265 (1993) ("A defense cannot possibly be adjudicated separately from the plaintiff's claim to which it applies; a counterclaim can be."). Thus, the plaintiff/counter-defendant was free to raise the statute of limitations as an affirmative defense in his Answer to the Counterclaims. (Doc. No. 7, at 3–4.) And, if proven, the statute of limitations may bar the defendants' Counterclaim.[8]

However, it has long been the general rule that a statute of limitations does not bar mere *defenses* as distinct from counterclaims. *See, e.g.*, *United States v. W. Pac. R.R. Co.*, 352 U.S. 59, 72 (1956) ("To use the statute of limitations to cut off the consideration of a particular defense in the case is quite foreign to the policy of preventing the commencement of stale litigation."); *Luckenbach Steamship Co. v. United States*, 312 F.2d 545, 548–51, 552 n.3 (2d Cir. 1963) ("The law is well settled that limitations do not normally run against a defense."); *accord RL BB Acquisition, LLC v. Bridgemill Commons Dev. Grp., LLC*, 754 F.3d 380, 387 (6th Cir. 2014)

---

[8] The plaintiff's reliance on *Ritchie* is misplaced, insofar as he claims that the case stands for the proposition that the statute of limitations can be deployed to bar untimely counterclaims. In fact, although this is not made entirely clear by the Sixth Circuit's opinion, the underlying briefing shows that *Ritchie* involved two consolidated cases: a lead case, *Robert J. Ritchie et al. v. Alvin Williams et al.* ("the Ritchie Action"), filed in the U.S. District Court for the Eastern District of Michigan, asserting claims under the Lanham Act, and a second suit, "*EB-Bran Productions et al v. Robert Ritchie et al.*," filed in the Circuit Court for Wayne County, Michigan, which was removed by the defendants and consolidated with the Ritchie Action. *See Ritchie v. Williams*, No. 03-1279, 2004 WL 5458347, at *1 (6th Cir. Mar. 8, 2004) (Final Brief of Appellants). The appellants sought review of the district court's conclusion that the claims in their removed state court action were entirely preempted by the Copyright Act and barred by the Copyright Act's statute of limitations. *Id.* at *3; *see also Ritchie*, 395 F.3d at 287 ("The District Court correctly concluded that all of the Williams group's state law claims are time-barred."). This is actually immaterial, because the defendants expressly concede that the plaintiff has a legal right to assert a statute-of-limitations defense to their counterclaims.

(noting that "'it would be incongruous to hold that once a lawsuit is properly before the court, decision must be made without consideration of all the issues in the case and without the benefit of all the applicable law'" (quoting *W. Pac. R.R.*, 352 U.S. at 72)).

This long-standing principle has been applied in the copyright context as well. *See, e.g.*, *TD Bank N.A. v. Hill*, 928 F.3d 259 (3d Cir. 2019) (rejecting the plaintiff's contention that the Copyright Act's statute of limitations barred the defendant's co-ownership defense to the plaintiff's copyright infringement claims and noting that the rule "holds true even if the defendant also brings an untimely ownership counterclaim"); *Est. of Hogarth v. Edgar Rice Burroughs, Inc.*, 342 F.3d 149, 163 (2d Cir. 2003) (holding that the defendant's factual "work for hire" defense to the plaintiff's renewal rights claim based on authorship was not time-barred, noting that the defendant had not "made a claim" or asserted a counterclaim).[9]

The rule that a statute of limitations will not bar defenses, like most rules, is subject to an exception. Several courts, albeit not yet the Sixth Circuit, have held that an exception to the rule prohibits parties from "skirting" statutes of limitation by "bringing time-barred claims as affirmative defenses." *Heartland Materials, Inc. v. Warren Paving, Inc.*, No. 5:16-CV-00146-TBR, 2018 WL 2324075, at *5 (W.D. Ky. May 22, 2018) (citing *City of Saint Paul v. Evans*, 344 F.3d 1029, 1031 (9th Cir. 2003)), *aff'd*, No. 19-5510, 2020 WL 3432942 (6th Cir. June 23, 2020).

In *Evans*, the plaintiff City brought suit challenging the validity of a settlement agreement, and the defendant filed counterclaims to reaffirm the agreement. The district court found that the City's claims were barred by the six-year statute of limitations, but it "permitted the City to raise the identical allegations as defenses to [the defendants'] counterclaims. *Evans*, 344 F.3d at 1031.

---

[9] The court in *Hogarth* did state, in dictum, that, "even if [the defendant] had filed a time-barred counterclaim, the statute of limitations would not have prevented [it] from asserting its affirmative defense to the [plaintiffs'] claim." *Hogarth*, 342 F.3d at 164.

The district court then ruled on the merits of the defenses and entered judgment in favor of the defendants. On appeal, the Ninth Circuit affirmed on the basis that "the City's affirmative defenses are likewise barred by the statute of limitations," without reaching the merits of the defenses. It concluded that "[t]o hold otherwise would permit plaintiffs, through a sort of jurisdictional jujitsu, to evade the limitations statutes by bringing a time-barred declaratory judgment action, waiting for the defendant to assert its interests in the form of a counterclaim, and then raising the identical time-barred claims as defenses." *Id.* In reaching that conclusion, the Ninth Circuit acknowledged the rule that parties are generally permitted to raise defenses that would be time-barred if they were raised instead as affirmative claims for relief. *Id.* at 1033–34 (citing *W. Pac. R.R.*, 352 U.S. at 72; *Luckenbach S.S. Co.*, 312 F.2d at 548–49). The court noted, however, that "[a] common thread running through these cases [in which time-barred claims have been permitted to be raised as defenses] is the emphasis on the respective roles of the parties in the litigation as a whole." *Id.* at 1035. Specifically, "[i]t is important that *the party asserting the defense is not, simultaneously or in parallel litigation, seeking affirmative recovery on an identical claim.*" *Id.* (emphasis added). That is, "whether affirmative defenses are exempt from statutes of limitations largely hinges on a realistic assessment of the parties' litigation posture." *Id.*

Applying that principle to the case before it, the Ninth Circuit found that the City was clearly the "aggressor," as the lawsuit boiled down to its attempt to invalidate an agreement. And the City's defenses to the defendants' counterclaims were "mirror images of its time-barred claims." *Id.* at 1035. As such, however denominated, the defenses were "simply time-barred claims masquerading as defenses" and, thus, "likewise subject to the statute of limitations bar." *Id.* at 1035–36; *see also Agnew v. United Leasing Corp.*, 680 F. App'x 149, 151 (4th Cir. 2017) ("[W]hether affirmative defenses are exempt from statutes of limitations largely hinges on a

realistic assessment of the parties' litigation posture." (quoting *Evans*, 344 F.3d at 1035));

*Heartland Materials, Inc.*, 2018 WL 2324075, at *6–7 (holding that the defendants were the true "aggressors" in the case and that their affirmative defenses, which had been raised in prior litigation as affirmative claims and had been dismissed as time-barred, were likewise barred when raised as defenses, relying on *Evans*);[10] *Davis v. 24 Hour Fitness Worldwide, Inc.*, 75 F. Supp. 3d 635, 639 (D. Del. 2014) (finding that the defendant was the "initial aggressor . . . despite being the defendant in litigation" and that its affirmative defenses, which "mirror[ed] the time-barred counterclaims," were likewise time-barred (citing *Evans*, 344 F.3d at 1035–36)).

The principle that "limitations do not normally run against a defense . . . has often been expressed in the figure of speech that the statute is available only as a shield, and not as a sword." *Luckenbach S. S. Co.*, 312 F.2d at 549 n.3 (citations omitted). The defendants rely on this figure of speech in support of their ability to raise their factual defenses to Don's claims, even if their counterclaims are ultimately found to be time-barred—that is, they deny that they are the "aggressors" or that they seek affirmative relief. The court is unpersuaded. The underlying facts indicate that the defendants served notice upon Don on August 1, 2016 that they were "terminating" the 1980 Release (*see* Doc. No. 41-1, at 16), and they also sought to terminate the 1960 Grant as successors to an author. On November 6, 2017, counsel for the defendants sent counsel for the plaintiff a letter stating that the defendants had been informed by Sony/ATV (the successor in interest to Acuff-Rose) that Don Everly had "reclaimed all copyright termination

---

[10] The district court also found, in the alternative, that the claims were barred by issue preclusion. The Sixth Circuit affirmed on issue preclusion grounds, noting that it had not yet addressed the specific issue raised in *Evans* and that, although the district court's analysis was "well reasoned and persuasive," it did not reach the question there because the case "fit[] squarely within the doctrine of issue preclusion." *Heartland Materials, Inc. v Warren Paving, Inc.*, No. 19-5510, --- F. App'x ---, 2020 WL 3432942, at *6 (6th Cir. June 23, 2020).

rights in connection with ['Cathy's Clown']" and giving notice of their contention that "Don Everly has misappropriated the [defendants'] portion of those rights and monies since the effective date of the termination of transfers" by the defendants. (Doc. No. 41-1, at 26.) The letter demanded that the plaintiff "confirm to [the defendants their] share of the ownership in the copyrights and to pay to [them] the associated monetary compensation to which [they are] entitled" and threatened to "pursue all legal remedies available to enforce [their] rights" if he did not. (*Id.*)

In other words, the defendants seek to topple the status quo under which Don Everly has been operating for forty years. In response to the defendants' threat of litigation, Don Everly filed suit two days later, in an essentially defensive posture, seeking a declaration that Phil is *not* an author of "Cathy's Clown" and, therefore, that the 2014 and 2016 Notices of Termination are invalid and that the defendants are "estopped" from making any claims in connection with the composition. (Doc. No. 1.) In their Answer, the defendants deny the factual allegations in the Complaint, asserting that Phil *is* an author; they set forth a counterclaim affirmatively alleging that Phil is an author, that they are the statutory successors to Phil Everly's rights under 17 U.S.C. §§ 304(c) and 203(a), that the 1980 Release is unenforceable, and that the defendants, as Phil's successors "are entitled to one-half of the income earned from the exploitation of the Composition. (Doc. No. 5, at 7.) They demand a declaration to that effect. The defendants are the "aggressors" in this dispute.

This is not a situation in which Don is claiming copyright infringement or seeking damages from the defendants, in response to which the defendants assert co-ownership or co-authorship as an affirmative defense. The defendants, instead, make an authorship claim on behalf of Phil, which may or may not be time-barred. And, in response to the plaintiff's preemptive claims, they assert a defense based on Phil's authorship. In other words, applying *Evans* to the facts here, although

nominally defendants, the defendants clearly seek affirmative relief, and their grounds for relief effectively mirror their defense to Don's claims.

Under these circumstances, the court finds, based on *Evans*, that, if the defendants' authorship claim is time-barred, their defenses based on authorship, which mirror their affirmative claim, will also be time-barred. The court reaches this conclusion based in part on the fact that application of the general rule—that the statute of limitations does not operate to bar affirmative defenses—could potentially lead to an absurd and circular result in this case. As matters stand, there is a factual dispute as to whether (and when) "Don expressly repudiated Phil's authorship of *Cathy's Clown*." *Everly*, 958 F.3d at 459. If, hypothetically, Don were able at trial to defend against the defendants' counterclaims by establishing that he plainly and expressly repudiated Phil's claim of authorship more than three years before the defendants filed their counterclaim seeking a declaration as to Phil's co-authorship status, then the court would have to conclude that the defendants' counterclaim for a declaration that Phil Everly *is* an author of "Cathy's Clown" was time-barred by the three-year statute of limitations, and, likewise, that their Notice of Termination of the 1960 Grant, premised upon their claim that Phil is a co-author, is invalid. However, under the *Western Pacific Railroad* rule, their factual defense to Don's request for an affirmative declaration that Phil is *not* an author would *not* be barred by the statute of limitations. As a result, the court could also (still hypothetically) find as a factual matter that Phil *is* an author and thus deny the plaintiff's request for a declaration to the contrary, leaving the parties, and the resolution of this case, completely in limbo. "Put simply, to allow an affirmative defense to be put forth despite a statute of limitations having run is one thing; to expand the period within which a claimant may prove its [authorship] rights outright is an entirely different matter. Since in this case [the defendants] seek[] the latter, the statute of limitations applies and provides yet another reason

that [the defendants] cannot make out [their] affirmative defense of joint-[authorship] [of] the Work." *Complex Sys. v. ABN AMBRO Bank N.V.*, 979 F. Supp. 2d 456, 474 (S.D.N.Y. 2013).

###    C.    What Is the Accrual Date for a Copyright Termination Claim?

The defendants assert that their termination rights claim could only accrue as of the effective date of their 2014 Notice of Termination of the 1960 Grant, or November 14, 2016. They seek judgment as a matter of law that the claim is timely because their Counterclaim was filed within three years of that date, irrespective of what might have happened between Phil and Don before that date. More precisely, the defendants insist that, as "newfound claimants" to rights accruing upon termination, they should be permitted to "proceed without prejudice to what may have occurred during the original term." (Doc. No. 69, at 2.) Although the defendants frame their motion as asking for judgment as to the timeliness of their termination claim, the court understands their argument to be that their termination claim, if timely, should not be barred, even if the claim that Phil is an author is time-barred.

In support of this proposition, the defendants rely, first, on *Siegel v. Warner Brothers Entertainment, Inc.*, 542 F. Supp. 2d 1098, *rev'd in part sub nom. Larson v. Warner Bros. Entm't*, 504 F. App'x 586 (9th Cir. 2013). In *Siegel*, the heirs of a co-creator of the "Superman" comic book character brought claims under the Copyright Act, seeking a declaration that they had successfully terminated the original grant of copyright and recaptured their decedent's half of the copyright. *Id.* at 1102. The defendant in *Siegel* argued that the termination action was untimely based on a 1997 letter it characterized as repudiating the plaintiffs' ownership rights. The court noted that, "although couched in terms of terminating" the original grant of copyright, the action was "in effect one for co-ownership of the copyright in the Superman material" at issue. *Id.* at 1034. The court noted that claims of co-ownership accrue "when there is a 'plain and express repudiation of co-ownership . . . communicated to the claimant.'" *Id.* (quoting *Zuill v. Shanahan*,

80 F.3d 1366, 1369 (9th Cir. 1996)). Although the court questioned whether the plaintiffs' claims in that case should be deemed to have accrued, instead, on the effective date of the notice of termination, the effective date of the notice occurred exactly one day after the plaintiffs received a 1999 letter from the defendant that clearly and unambiguously put the plaintiffs "on notice that [the defendant] reject[ed] both the validity and scope of the Notices." *Id.* at 1135. Because the lawsuit was timely using either event as the date on which the claims accrued, the court did not have to resolve which was the appropriate marker.

Nonetheless, the court explained in a footnote why the effective date of a notice of termination should be deemed the accrual date in a "case involving the right to terminate a grant." *Id.* at 1134 n.7. The court's discussion, however, is not favorable to the defendants in the case at bar, because it expressly distinguished between claims in which authorship, as opposed to technical ownership, is disputed. The court stated:

> One could quibble with whether any date other than the termination effective date itself can serve as the accrual date in a case involving the right to termination of a grant. Much like having to await a judicial determination whether one is a[n] heir (as opposed to instances when an ownership claim is based on whether or not someone is a creator) has been held to be the earliest instant for an accrual date, *see Stone v. Williams*, 970 F.2d 1043 (2nd Cir.1992) (Hank Williams' putative daughter's claim to be an owner had to await judicial determination that she was in fact his daughter and heir, thus accrual date was not triggered when Hank Williams first contested her putative status but instead when state court made determination that she was his heir), so too a claim of ownership by way of termination of a grant cannot be realized unless and until after the termination's effective date. *Stated another way, a party's status as a creator is a factual question subject to being challenged by the other putative co-owner at any time, and hence, the accrual date for the same would begin at that instant.* The same, however, is not true of a putative co-owner by way of termination. *Their status as co-owner is not predicated upon a pre-existing factual scenario, like whether they were involved in jointly creating the material per se.* Instead, their status as a co-owner is predicated upon a legal mechanism—the exercise of a new statutory right revoking an earlier transfer in the copyright in question, be it one they solely or jointly created—that takes place at a certain defined point in time. Unless and until that legal triggering point is passed, there is nothing for the other co-owner to reject or challenge. This is particularly the case given that termination notices can be served up to ten years before the

effective termination date. Defendants' position would, as a matter of logic, countenance scenarios where due to an early "rejection" of the termination notice, the passage of the limitations period would occur well before the termination effective date even arrived (and with it the putative co-owner's rights even vested).

*Id.* at 1134 n.7 (emphasis added).

This court reads *Siegel* as implicitly recognizing that, when a termination claim by a putative co-owner is subject to a "pre-existing factual scenario, like whether they were involved in jointly creating the material per se," *id.*, application of the rule fixing accrual from the date of the "plain and express repudiation" of co-authorship would still apply. Viewed thus, *Siegel* does not aid the defendants here.

In the second case on which the defendants rely, *Wilson v. Dynatone Publishing Co.*, 892 F.3d 112 (2d Cir.), *reh'g denied*, 908 F.3d 843 (2d Cir. 2018), the plaintiffs, former members of a band known as "Sly Slick & Wicked," claimed authorship of, and ownership of the renewal term copyrights in, the musical composition and sound recording of a song entitled "Sho' Nuff." *Id.* at 115. The district court granted the defendants' Rule 12(b)(6) motion to dismiss the claims as untimely. The district court found that the defendants had repudiated the plaintiffs' copyright ownership claims much earlier, "during the initial copyright terms," and "that a repudiation of Plaintiffs' claims with respect to the original terms constitutes a repudiation of the renewal terms." *Id.* The plaintiffs' actual authorship was not at issue, but the district court found that the plaintiffs were on notice during the 1970s that the defendants had "repudiated Plaintiffs' ownership of the original term copyrights, and '[t]his state of affairs persisted past the start of the renewal term in 2001 . . . .'" *Id.* at 118 (quoting district court decision).

On appeal, the Second Circuit concluded that, viewed in the light most favorable to the plaintiffs, the facts as alleged in the complaint showed that the defendants' copyright registrations in 1974 "may have repudiated Plaintiffs' claims to the initial [copyright] terms," but they "did not

repudiate Plaintiffs' ownership of the renewal terms." *Id.* at 118. Notably, the defendants' copyright registrations did not necessarily repudiate the plaintiffs' authorship claims. Thus, "[i]f Plaintiffs were the authors of the Sho' Nuff composition and sound recording, as alleged, they were entitled under § 304 to the renewal terms regardless of whether they abandoned their rights to the initial terms, and the renewal terms vested automatically with them." *Id.* at 118. The court found that the fact that the plaintiffs did not receive royalty payments during the original term did not imply repudiation of the renewal term, because "failure to pay royalties during the original terms 'is irrelevant, as it would be merely consistent' with the assignment of the initial copyright terms." *Id.* at 119 (quoting *Gary Friedrich Enters., LLC v. Marvel Characters, Inc.*, 716 F.3d 302, 318 n.15 (2d Cir. 2013)). The court also held that the defendants' registration of a renewal term with the Copyright Office did not amount to repudiation of the plaintiffs' claim, stating: "If mere registration of a copyright without more sufficed to trigger the accrual of an ownership claim, then rightful owners would be forced to maintain constant vigil over new registrations. Such a requirement would be vastly more burdensome than the obligations that a reasonably diligent plaintiff would undertake. Authors would regularly lose their rights merely by virtue of failing to monitor." *Id.* at 119 (internal citation and quotation marks omitted).

*Wilson*, like *Siegel*, does not come to the defendants' aid in the case before this court, because the facts and legal principles at stake are simply inapposite. This case does not involve mere copyright ownership and renewal rights but authorship and the rights that accompany it. There is no dispute in this case that Acuff-Rose, as the agent of Don Everly, renewed the copyright to "Cathy's Clown" in 1988 and that Don Everly is the sole renewal claimant listed on, and the sole author of the words and music to "Cathy's Clown" identified in, the Renewal Registration. ((Doc. No. 1-5.)

More to the point, the defendants' termination claim in this case is entirely derivative of their authorship claim. Because termination rights can be exercised only by authors or their successors, 17 U.S.C. § 304(c), (a)(1)(C), the defendants' ability as Phil's successors to exercise termination rights depends on their being able to establish that Phil is a co-author of the work in question. In other words, authorship (or being the successor of an author) is a necessary element of a termination claim. If the defendants' ability to claim Phil's status as co-author is found to be time-barred, then their termination claim will necessarily fail, not due to the statute of limitations *per se*, but because they will be unable to establish an essential element of the termination claim. *See Everly*, 958 F.3d at 450 ("But, for Phil to have any right to termination, he must be an 'author' of *Cathy's Clown*." (citing 17 U.S.C. §§ 203(a), 304(c))).

On the other hand, if their authorship claim is not time-barred and it is determined that Phil is a co-author of "Cathy's Clown," then the termination rights granted by 17 U.S.C. § 304 would automatically vest in the defendants as statutory successors to Phil. In that event, the defendants' Notice of Termination of the 1960 Grant, filed in early 2014 and effective November 14, 2016 (Doc. No. 1-7, at 4–9), will clearly be timely pursuant to 17 U.S.C. § 304(c).

In sum, the court accepts that the defendants are likely correct that a termination claim would ordinarily accrue on the effective date of the notice of termination. Regardless, the effective date of the 2014 Notice of Termination does not operate to reset the statute of limitations on the defendants' authorship claim. The viability of the termination claim in this case is entirely dependent upon the defendants' ability to prove their claim that Phil Everly is a co-author of "Cathy's Clown." which, itself, may or may not be time-barred. Because the defendants are putting the cart before the horse, insofar as they contend that their termination rights accrued in 2016 regardless of whether their authorship claim is time-barred, the court will deny their Motion for

Judgment as a Matter of Law on this issue as well.

## V. CONCLUSION

For the reasons set forth herein, the plaintiff's Motion for Partial Summary Judgment will be granted, but the court is unsure what that means for the parties' other claims. The defendants' Motion for Judgment as a Matter of Law will be denied.

This opinion should not be construed as signaling that the court has prejudged in any way the questions of whether and, if so, when the plaintiff plainly and expressly repudiated Phil Everly's claim of co-authorship of "Cathy's Clown" and, thus, whether the defendants' co-authorship counterclaim—or the affirmative defense that mirrors that claim—is barred by the statute of limitations.

An appropriate Order is filed herewith.

ALETA A. TRAUGER
United States District Judge